## 62131. DAVIS v. THE STATE.

QUILLIAN, Chief Judge.

The defendant was charged with four counts of armed robbery and one count of recidivism. He was convicted of three counts of armed robbery and the recidivist count. He brings this appeal. *Held:*

1. Counsel for the defendant moved to sever the four counts of armed robbery for trial. The motion was denied. The trial judge — citing *Pass v. State,* 227 Ga. 730 at page 731 (182 SE2d 779) stated that "the Supreme Court has indicated that the test is whether the interest of justice would be served by ordering separate trials. It's entirely discretionary with the trial judge . . .." We do not agree.

In *Pass,* supra, the Supreme Court was construing Code Ann. § 26-506 (b) and (c) (CCG § 26-506 (b) (c); Ga. L. 1968, pp. 1249, 1267) which deals only with "several crimes arising from the *same conduct* . . .." (Emphasis supplied.) In the instant case the only apparent reason for joinder of four counts of armed robbery committed at different times and places, with different victims, was similarity of offenses.

Under Code Ann. § 26-506, a prosecutor, to avoid multiplicity of prosecution is required to prosecute in a single prosecution "all known crimes *arising from the same conduct* within the jurisdiction of the same court, subject to the right to severance by the court in the interest of justice." *Jarrell v. State,* 234 Ga. 410 (1) (216 SE2d 258). (Emphasis supplied.) However, "[w]henever two or more offenses have been joined for trial *solely* on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." *Dingler v. State,* 233 Ga. 462, 463 (211 SE2d 752). (Emphasis supplied.) Accordingly, at issue is whether the offenses alleged arose from "the same conduct" or were "joined for trial solely on the ground that they are of the same or similar character."

"[O]ur appellate courts have equated the term 'conduct' with the term 'transaction' in a plethora of cases. [Cits.]" *Trimble v. State* 156 Ga. App. 9, 10 (274 SE2d 10). These four robberies spanned a period of four weeks, involved four different victims, three different places, four different hours, and dissimilar methods of accomplishment in three of the cases. They do not appear to have arisen from the "same transaction." However, *Dingler* and its progeny command only that the defendant "has a right to a severance 'where the offenses are joined *solely* on the ground that [the offenses] are of the same or similar character'. . .." *Coats v. State,* 234 Ga. 659, 662 (217 SE2d 260); (Emphasis supplied.) Thus, if there is a valid reason for joinder other than similarity of offense, then severance of offenses becomes discretionary with the trial court. For example,

*Haisman v. State,* 242 Ga. 896, 900 (252 SE2d 397) stated that "[o]ffenses may also be joined for trial when they are based (1) 'on the same conduct' or (2) 'on a series of acts connected together' or (3) on a series of acts 'constituting parts of a single scheme or plan.'"

Thus, in *Phillips v. State,* 238 Ga. 616, 618 (234 SE2d 527), involving robbery of the same convenience store cashier twice within one month, the Supreme Court held: "In view of the fact that the charges against the [defendant] involve both the same store and a common victim, it was not error to refuse to order that they be severed." Again, in *Clemson v. State,* 239 Ga. 357 (1) (236 SE2d 663) where two counts of robbery and two counts of attempt to commit robbery were joined, the court found "where separate crimes are committed in order to accomplish a single criminal purpose, the crimes are said to constitute parts of a single scheme or plan, even if they are somewhat removed from one another in terms of time and place. [Cit.] The same is true of a continuing series of crimes committed against the same victim. [Cits.] . . . Here the crimes are not merely similar, but are nearly identical . . . Clearly, there was more reason here for joining the offenses than simply that they were 'of the same or similar character.' " Hence, where the modus operandi of the perpetrator is so strikingly alike, that the totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joined — subject to the right of the defendant to a severance in the interests of justice. See *McClesky v. State,* 245 Ga. 108, 114 (263 SE2d 146); *Hance v. State,* 245 Ga. 856, 865 (268 SE2d 339).

In the instant case, Joan Gaskins testified that she was robbed while in charge of the Bemiss Road Holiday Market on May 28, 1980. It was about 8:30 a. m. and she saw a man with a stocking over his head and with a "nightclub, a nightstick" in his hand who demanded she "put money in the bag, some bags."

Kathy Montgomery, while working at the West Hill Avenue Holiday Market at 11:00 p. m. on June 5, 1980 went into "the cooler" and saw a black man with a gun. He asked her to "give him all the money . . . and he told [her] if I called the police he'd be back to blow my brains out." The gun had "a long barrel on it . . . it didn't look like a regular pistol."

Michael Shepherd testified that he was working at the Zippy Mart on June 22, 1980 at 10:20 p. m. when he saw a man walk around the counter "cocks the gun and points it at me and tells me to give it to him . . . Give it to me now . . . and he had my immediate attention." Shepherd gave him the bills from the cash register and the robber left. His pistol was "just a small pistol . . . It appeared to be a semi-automatic type." The robber had him get down on the floor

until he left.

Janet McAllister was working at the Bemiss Road Holiday Market on June 23, 1980 between 9:30 and 10:00 p. m. when "a black guy jumped out of the cooler . . . and threatened to blow my head off . . . He told me to go up to the cash register and get some paper bags and put the money in a bag . . . He told me to lay down on the floor until he got out of the store." The gun he used looked "like a magnum . . . It had a long barrel on it, short handle and long barrel."

In summary, only the first and fourth robberies were committed at the same store. The first robbery was so dissimilar that the defendant was acquitted. The robber at the Zippy market used a "small pistol . . . semi-automatic." The second and fourth robbers used a gun with a long barrel, and both used the cooler to surprise the clerk. Both robbers threatened to "blow my head off" or "blow my brains out . . ."

An analysis of the facts of the four robberies reveal that number one is dissimilar to the other three. Number three is not similar to the other three. Only two and four share sufficient common characteristics to indicate a correlative modus operandi.

This court has held that a three count indictment for receiving stolen property which occurred at different times and involved different property stolen from different persons "it is mandatory that the trial judge, upon motion of defendant, order separate trials for each of the crimes charged. " *Dingler v. State,* 134 Ga. App. 223, 224 (214 SE2d 6); Accord: *Buckles v. State,* 137 Ga. App. 802 (1) (225 SE2d 61).

In *Ealey v. State,* 139 Ga. App. 604 (1) (229 SE2d 86), the defendant was indicted for a burglary in January 1975 but before he was brought to trial he was tried "on three separate occasions for other alleged burglaries and assaults." We held: "The three interim trials for burglary and assault involved different dates and transactions, requiring different proof; they were separate incidents not arising from the 'same conduct' within the meaning of Code Ann. § 26-506 (b)." Id. Accord: *Booker v. State,* 231 Ga. 598 (1) (203 SE2d 194).

In *Wigley v. State,* 140 Ga. App. 145 (1) (230 SE2d 108) the defendant moved for severance of a three count accusation charging him with drunk driving on June 29, July 13 and November 16, 1975, which was denied. "This was error. Where the counts have been joined solely on the ground that the offenses are of the same or similar character, the trial court has no discretion but to grant the motion." Id. Accord, *Stone v. State,* 155 Ga. App. 357 (1) (271 SE2d 22).

It was error for the trial judge to fail to sever the first and third counts from trial of the second and fourth counts. It clearly appears

that the sole reason for joinder of the first and third counts to trial of the second and fourth counts was similarity of offenses. A new trial must be granted. *Dingler v. State,* 233 Ga. 462, supra; *Dingler v. State,* 134 Ga. App. 223, supra; *Buckles v. State,* 137 Ga. App. 802, supra; *Ealey v. State,* 139 Ga. App. 604, supra; *Wigley v. State,* 140 Ga. App. 145, supra; *Stone v. State,* 155 Ga. App. 357, supra.

2. It is alleged that the trial court erred in denying defendant's motion to suppress evidence seized in a search of defendant's mobile home and automobile. Defendant argues that the supporting affidavit for the search warrant "does not describe with enough particularity the alleged 'victims' and other 'witnesses' which provide much of the information which served in the affidavit."

The affidavit shows the affiant, a detective sergeant, was investigating 6 armed robberies within the past few months. Each robbery was committed by a black male with a short, stocky build and a mustache. The affiant stated that this description was given him by "[e]ach victim and five witness..." The last robbery was witnessed by "Ruby and Ellis Brown" who saw a short, stocky black male with a mustache, leave the convenience store after the robbery, enter a silver Ford Thunderbird, and turn onto Cat Creek Road. The affiant searched all mobile home parks on Cat Creek Road and found only one silver Ford Thunderbird. A tag check showed the car belonged to the defendant. A check of local records showed defendant had a prior conviction for armed robbery. The affiant then checked this home address and found the defendant. He was driving a 1975 silver Ford Thunderbird, and his physical description was five feet, six inches tall, 160 pounds, stocky build, and he had a mustache. This information was placed in the affidavit and sworn to by the affiant before the issuing magistrate.

The unnamed "victims" and "witnesses" to the robberies who were quoted in the affidavit provided only a general description of the perpetrator of each offense. This was hearsay, but hearsay may be the basis for issuance of a valid warrant. Jones v. United States, 362 U. S. 257 (80 SC 725, 4 LE2d 697). Where such hearsay comes from a confidential informant, the standards of Aguilar v. Texas, 378 U.S. 108 (84 SC 1509, 12 LE2d 723) are applicable. However, where the hearsay declarant is an identified interested citizen, government official, or police officer, their credibility is not as suspect and the analysis is not as stringent. *Tuzman v. State,* 145 Ga. App. 761, 766 (244 SE2d 882). The purpose of requiring such underlying information is to credit the hearsay with authenticity so that the magistrate may know that he is relying on something more than a casual rumor circulating in the underworld or an accusation based merely on the individual's reputation. Spinelli v. United States, 393

U.S. 410, 416 (89 SC 584, 21 LE2d 637). We find the underlying circumstances, including the listing of two eyewitnesses to the last robbery, sufficient to credit the hearsay under *Spinelli,* supra. *Simmons v. State,* 233 Ga. 429, 432 (211 SE2d 725).

Defendant's argument that this was a general warrant because of the manner in which it was executed finds no foundation for support in either fact or law. The warrant was issued to search for a pistol and a mask. The pistol was found, but the continuing search for the mask uncovered proceeds from the robberies. The search was lawful, and when the executing officer is conducting a lawful search, he may seize anything he discovers, possession of which is unlawful, or anything which is tangible evidence of the commission of a crime. *Pass v. State,* 227 Ga. 730, 734 (6), supra; *King v. State,* 145 Ga. App. 789 (1) (245 SE2d 310).

3. The next enumeration claims error in denial of the defendant's motion to suppress the "pre-trial" and "in-trial identification."

The witnesses were permitted to view the defendant in a physical lineup the afternoon following his arrest. When arrested he had a mustache. Before the lineup he shaved off his mustache. There were seven men in the physical lineup. They were all about the same height, weight, and build. The witnesses selected members of the lineup other than the defendant. No one selected the defendant. Thereafter, a photo showup was held in which the defendant's picture was placed in the police office's "mug shot book" about "mid way of the book." The photo had been taken of the defendant before he shaved off his mustache. All four victims of the robberies charged herein selected the photograph of the defendant. Although the photographs of none of the men who appeared in the physical lineup were in the "mug book" which was subsequently used by these witnesses — there were approximately "eighty to ninety" photos in the book and defendant's photo was placed in the middle part.

In view of the defendant's attempt to avoid identification by shaving his mustache, before the lineup but after his picture was taken, we find no prejudicial error in the procedure followed by the police. It was known by all parties the robber in each armed robbery had a mustache. By shaving his mustache just before the physical lineup, the defendant changed his appearance from that when he was arrested and his picture was taken that morning. Because he did not have his natural appearance in the corporeal lineup the police were left with the option of using the photo lineup or waiting for the mustache to be regrown. It would have been more desirable if photos of the men in the corporeal lineup had been included in the photo lineup but the mug book was already prepared and the witnesses were

present. In view of the large number of photos in the mug book and the totality of the circumstances we find no error.

In Neil v. Biggers, 409 U.S. 188 (93 SC 375, 34 LE2d 401) the court emphasized "the primary evil to be avoided" is the "substantial likelihood of irreparable ˉmisidentification." Thus the "central question" is whether "under the totality of the circumstances" the identification was reliable even though the "confrontation procedure was suggestive." Manson v. Brathwaite, 432 U.S. 98 (97 SC 2243, 53 LE2d 140). Whenever the trial court finds " 'no substantial likelihood of misidentification' " the evidence may properly go to the jury. Id. We find no prejudicial error in the procedure followed. *Payne v. State,* 233 Ga. 294 (II) (210 SE2d 775); *Heyward v. State,* 236 Ga. 526 (224 SE2d 383).

4. The next enumeration posits three arguments: (a) the defendant contends he should have been punished under the recidivist statute pertaining to armed robbery — Code Ann. § 26-1902 (CCG Code § 26-1902; Ga. L. 1968, pp. 1249, 1298, as amended through 1976, p. 1359), as opposed to the general recidivist statute —Code Ann. § 27-2511 (Code § 27-2511, as amended through 1974, pp. 352, 355); (b) the general recidivist statute specifically excludes capital offenses; and (c) the general recidivist statute is unconstitutional as infringing on the State Board of Pardons and Paroles authority under the Constitution — Art IV, Sec. III, Par. I (Code Ann. § 2-2101).

(a) Code Ann. § 26-1902 authorizes imposition of imprisonment of not less than 10 years when an accused is convicted "for a second or subsequent such offense . . ." of armed robbery. Code Ann. § 27-2511 requires a defendant convicted of a fourth felony to "serve the maximum time provided in the sentence of the judge . . . and shall not be eligible for parole until the maximum sentence has been served." The sentence to which a defendant is subject is controlled by the indictment. If the state indicts the defendant for armed robbery and in the recidivist count includes separate convictions of three prior felonies — Code Ann. § 27-2511 is applicable — regardless of the fact that all three prior convictions are also armed robberies.

(b) The general recidivist statute specifically excludes capital felonies. For the purpose of imposition of punishment — armed robbery is not a capital felony. *Collins v. State,* 239 Ga. 400, 402 (236 SE2d 759). The general recidivist statute includes — for purpose of punishment — the offense of armed robbery. See *Young v. Ricketts,* 242 Ga. 559 (250 SE2d 404).

(c) The defendant is without standing to contest the constitutionality of Code Ann. § 27-2511. *Green v. State,* 244 Ga. 755 (262 SE2d 68).

5. The trial court did not abuse its discretion in denying defendant's motion for funds for hire of an independent expert of fingerprints. *Whitaker v. State,* 246 Ga. 163 (3) (269 SE2d 436).

6. We find no error in the trial court permitting the two investigators to remain in the courtroom to assist the prosecutor. *Jarrell v. State,* 234 Ga. 410 (6), supra.

7. The remaining enumeration of error is without merit.

*Judgment reversed. McMurray, P. J. and Pope, J., concur.*

Decided June 26, 1981 —
Rehearings denied July 21, 1981 —

*Roger J. Dodd,* for appellant.

*H. Lamar Cole, District Attorney, Richard W. Shelton, Assistant District Attorney,* for appellee.