## 71507. WILLIAMS v. THE STATE.
### (344 SE2d 247)

McMURRAY, Presiding Judge.

The defendant was charged under a multi-count indictment by the DeKalb County Grand Jury for the following offenses: Count 1, rape; Count 2, robbery; Count 3, burglary (all occurring on October 4, 1984, involving the same victim); Count 4, rape; Count 5, kidnapping with bodily harm (injury); Count 6, aggravated sodomy; Count 7, robbery; Count 8, burglary (all occurring on November 2, 1984, involving

a different victim from Counts 1, 2 and 3); and, Count 9, rape (occurring on December 30, 1984, and involving a different victim). Pursuant to a motion for severance filed by the defendant, the trial court severed Count 9 from the indictment. From May 20, 1985, through May 25, 1985, the defendant was tried for the crimes charged in Counts 1 through 8 of the indictment. The evidence adduced at trial, construed most favorably to support the verdict, showed the following: On November 2, 1984, at around 4:00 in the afternoon, the victim in Counts 4, 5, 6, 7 and 8, was at home alone when she heard something outside her door. The victim then heard the doorbell ring and when she opened the door a young man, later identified by the victim as the defendant, was standing outside. He asked whether her husband was home and referred to her husband by his correct name. When she answered "no," the defendant pushed in the door, jumped into the apartment and said, "This is a stickup." The victim started to scream, and the defendant, who had her by the arm, said, "If you scream, I'll cut you." The defendant then asked the victim for money. She told him that she did not have any. He then asked, "Do you have any gold?" She answered, "no." The defendant then said, "Well, I'll have some of you then." The defendant held the victim and each time she tried to move, he hit her in the face. He tried to push her into the bedroom to get her purse, and when she resisted he hit her in the jaw so hard that she fell down on the floor. He then removed her pants and panties and pulled down his own pants, got on top of her and raped her. He hit her in the face again and started to have "oral sex" with the victim. She told him that her husband would be home any minute and he jumped up and said, "Where's your purse?" She pointed to it in a room across the hall and he told her to go get it with him. The defendant then dragged the victim into the bedroom. He went through her jewelry box on the dresser and took her high school graduation ring, a pearl necklace and some other jewelry. He then put his pants back on and picked up her purse. The victim asked the defendant if they could go into the living room, and he agreed. After they entered the living room, the defendant began going through her purse. He became angry when he saw that there was no money in the purse and threw in on the floor. The defendant then pushed the victim onto the arm of the couch and started having "oral sex" with her again. When he was done, the defendant got up and asked her if she was going to call the police. She said no. The defendant asked her where the telephone was, and when she said that they didn't have one, he called her a liar. The defendant said, "Well, I'm going to leave now. I'll be right outside the door, so don't move. Don't do anything." After the defendant left, the victim put her pants on and waited about ten minutes until her husband came home. She told her husband what had happened and they got into the car and went to the

police station. The victim told the police what happened and gave them a description of the defendant. The defendant had left a Falcons' cap in the apartment and the victim's husband gave the cap to the police. The police then took the victim to Grady Hospital to be examined.

That evening, Investigator C. E. Thacker of the DeKalb County Police Department showed the victim a photographic lineup which included a photograph of the defendant that was several years old. She tentatively identified the defendant. On January 17, 1985, at the police station, the victim viewed a physical lineup which included the defendant. At that time, she was able to positively identify the defendant as the man who raped her.

The State then introduced the following evidence concerning the rape, robbery and burglary charges in Counts 1, 2 and 3. During the early morning hours of October 4, 1984, a young man, later identified by this victim as the defendant, broke into her apartment. The man called her by a variation of her given name and told her that he was there to take her valuables. After having the victim get her purse for him, he made her dump the contents of the purse out on the floor. He told her if she made any noise or cried out he would hurt her children who were asleep in the apartment. He then raped the victim. Next, the man rummaged around in the dresser and took her engagement ring. He told her that he knew where she worked and that if she called the police he would hurt her children. The man then left, taking the victim's engagement ring, a washcloth, and the bedsheet.

The evidence as to the description of the assailant that the victim in Counts 1, 2 and 3 gave to the police was inconsistent. On direct examination, she testified that the man who attacked her did not wear glasses. On cross-examination, she testified that her assailant may have been wearing glasses, but she wasn't certain. Investigator H. P. Brown of the DeKalb County Police Department testified that the victim told him that the man wore eyeglasses.

The State introduced the following evidence of a similar crime committed by the defendant: This victim testified that during the afternoon of May 11, 1983, at about 5:30 or 6:00, the defendant jumped into her car while she was stopped at a red light at the intersection of Glendale and North Decatur. The victim had her six-month-old son with her. After the defendant "jerked open the door," he put a flat edged razor to her son's throat and told her to start driving. The defendant made her drive around for about 1-½ hours. While the victim was driving, the defendant was holding the razor to the baby's neck. The defendant told this victim to drive into the gymnasium of a school that had garage type doors. While parked inside the gymnasium, the defendant took fifteen dollars and some change from the victim's purse. The defendant then "threw" the baby into the back

seat of the car. When the baby started crying, the defendant told the victim "that if [she] didn't shut [him] up, he would shut him up permanently." The defendant then performed oral sex on the victim and forced her to perform oral sodomy on him. The defendant then told her that he was going to rape her. He said that she could "do it in the front seat of the car or . . . do it on the concrete where [they] were parked inside the gymnasium." The victim pleaded to the defendant, asking him not to rape her. The defendant threatened her and she said, "Okay, I'll do anything, but just don't hurt me or my son." She told the defendant that "if [she] had to, [she] would rather go outside the car, because [she] didn't want to do that in front of [her] child." The victim got out of the car and the defendant raped her on the floor of the gymnasium. Afterwards, the defendant escorted the victim back to the car, and told her to stay there and not to move. The defendant then fled on foot.

From the foregoing and other evidence adduced at trial, the jury returned a verdict of *not guilty* as to Counts 1, 2 and 3 and *guilty* as to Counts 4, 5, 6, 7 and 8. The defendant filed a motion for new trial on June 19, 1985. This motion was denied and the defendant appeals. *Held*:

1. In his first enumeration of error the defendant contends that the trial court erred by refusing to sever Counts 1, 2 and 3. The defendant argues that he was entitled to a severance because the incident relating to Counts 4, 5, 6, 7 and 8, and the incident relating to Counts 1, 2 and 3 were dissimilar. "Where criminal offenses are joined solely on the ground that they are of the same or similar character, the defendant has a right to have the offenses severed. *Dingler v. State*, 233 Ga. 462 (211 SE2d 752). However, where the offenses are so similar that they show a common scheme or plan or have an identical modus operandi, severance is discretionary with the trial court. '(I)f there is a valid reason for joinder other than similarity of offense, then severance of offenses becomes discretionary with the trial court.' *Davis v. State*, 159 Ga. App. 356 (1) (283 SE2d 286). '(W)here the modus operandi of the perpetrator is so strikingly alike, that the totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joined — subject to the right of the defendant to a severance in the interests of justice. (Cits.).' Id. at 357." *Mack v. State*, 163 Ga. App. 778 (1), 779 (296 SE2d 115).

"[W]e find that the court did not abuse its discretion in denying severance as 'the crimes charged were so similar as to evidence a common plan or scheme and revealed [a similar] modus operandi.' *Davis v. State*, 158 Ga. App. 549 (1), 550 (281 SE2d 305)." *Mack v. State*, 163 Ga. App. 778 (1), 779, supra. See *Gober v. State*, 247 Ga. 652 (1) (278 SE2d 386); *Williams v. State*, 251 Ga. 749, 804 (312 SE2d 40).

Further, since the defendant was acquitted of the charges in Counts 1, 2 and 3 and since he has shown no harm or prejudice which might have been avoided by severing the trials, any questions concerning the trial court's failure to grant the defendant's motion to sever are moot. *Brown v. State*, 173 Ga. App. 640, 641 (327 SE2d 515).

2. In his second enumeration of error the defendant contends that the trial court erred in failing to grant his motion for continuance. "A motion for continuance is addressed to the sound discretion of the trial court. Absent a showing that it has been abused, that discretion will not be controlled. *Crow v. State*, 86 Ga. App. 11 (1) (70 SE2d 601) (1952). 'There is no fixed rule as to the number of days that should, of right, be allowed counsel in a criminal case to prepare the case for trial, but the trial judge, in the exercise of his discretion to grant or refuse a continuance, has to consider the facts and circumstances of each case to determine what the ends of justice require. A statement by counsel for the defendant that he has not had sufficient time to investigate and prepare the defense is a mere conclusion. Questions of this nature must of necessity be entrusted to the discretion of the trial judge. *Smith v. State*, 198 Ga. 849, 852 (33 SE2d 338); *Foster v. State*, 213 Ga. 601 (100 SE2d 426).' *Brown v. State*, 140 Ga. App. 160, 161 (230 SE2d 128) (1976)." *Hill v. State*, 161 Ga. App. 346 (1) (287 SE2d 779).

In the case sub judice, the record shows that counsel was appointed on April 29, 1985, 21 days prior to trial. Notwithstanding argument to the contrary, the record shows that defense counsel had adequate opportunity and time to prepare for trial. Furthermore, even though the trial lasted five days, the evidence was not complex or complicated. Consequently, the trial court did not abuse its discretion in denying the defendant's motion for continuance. See *Weaver v. State*, 170 Ga. App. 731, 732 (3) (318 SE2d 196).

3. Defendant next contends that the trial court erred by failing to grant discovery regarding two rape cases in which the defendant was not charged.

On May 10, 1985, the defendant filed a pre-trial discovery motion pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215), in which he asked for the circumstances surrounding two rapes in which the victims did not identify the defendant as the perpetrator. The defendant was not charged in either case.

The evidence at trial showed that three other rape victims, other than the victim in Count 1 and the victim in Count 4, viewed an in-custody lineup which included the defendant. The victim in Count 1 and the victim in Count 4 identified the defendant, the three other women did not. The defendant argues that information concerning two of the outside rape cases was exculpatory because the cases were

similar to the Count 1 and Count 4 rapes and he could have argued that the respective victims in Counts 1 and 4 were mistaken in identifying the defendant.

"At the threshold, an appellant must show that the exculpatory evidence which was not produced is material. It has been said that the mere fact that some undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish its materiality in a constitutional sense. The defendant has the burden of showing that the evidence withheld 'so impaired his defense that he was denied a fair trial within the meaning of the *Brady* rule.' [Cits.]" Ga. Crim. Trial Prac., (1985 ed.), § 14-11 (by Judge William W. Daniel). See *Williams v. State*, 251 Ga. 749, 787, supra.

In the case sub judice, the defendant has not shown how the evidence withheld "so impaired his defense that he was denied a fair trial . . ." The fact that three other victims were unable to identify the defendant may be relevant to those victims' ability to identify their assailant; however, we fail to see how it is relevant to the Count 1 victim's and the Count 4 victim's ability to identify their assailant. Further, the basis for the defendant's argument is speculative, as the evidence produced by the defense concerning the two uncharged rapes failed to show the similarities between those crimes and the crimes charged. "Mere speculation that the items the appellant wishes to review possibly contain exculpatory information does not satisfy [the defendant's] burden [of showing that the evidence is material.]" *Williams v. State*, 251 Ga. 749, 789, supra. Consequently, we find no error.

4. The defendant next contends that the trial court erred by allowing testimony as to a pre-trial identification of the defendant.

The record shows that the defendant was identified at a pre-trial lineup by the Count 1 victim and the Count 4 victim on January 17, 1985. At the time of the lineup, the defendant was not charged with the rapes of either the Count 1 victim or Count 4 victim, but was charged with the rape of another woman. Counsel for defendant was not present at the lineup. After the defendant was identified at the lineup by the Count 1 victim and the Count 4 victim he was charged with their rapes. "The presence of counsel at a lineup 'at or after the beginning of adversary judicial proceedings' is required under *Kirby v. Illinois*, 406 U. S. 682 (92 SC 1877, 32 LE2d 411) (1972). However, in the present case, the record fails to show that at the time of the lineup and thereafter when the [victims] viewed the lineup . . . the appellant had been formally charged with committing these crimes. Thus, we must conclude that the viewing of the [defendant at the] lineup took place during [the] investigatory [stages] of the case at a time when appellant was not required to have counsel present. See

*Mitchell v. Smith,* 229 Ga. 781, 782 (194 SE2d 414) (1972); *West v. State,* 229 Ga. 427 (1) (192 SE2d 163) (1972); and, see also, *Hicks v. Caldwell,* 231 Ga. 575, 576 (203 SE2d 212) (1974)." *Godbee v. State,* 232 Ga. 259, 262 (206 SE2d 432). See Ga. Crim. Trial Prac. (1985 ed.), § 6-7. Consequently, this enumeration is without merit.

5. In his fifth enumeration of error the defendant argues that testimony regarding scientific reports, prepared pursuant to the investigation of the Count 1 rape, was improperly admitted at trial because he was not furnished with a copy of the report pursuant to OCGA § 17-7-211. Any error committed by the State's failure to produce the scientific reports concerning the Count 1 rape is moot since the defendant was acquitted of the charges in that case.

With regard to the testimony concerning the scientific report in the Count 4 rape, the defendant does not complain that the report was not properly submitted pursuant to OCGA § 17-7-211; instead, he argues that testimony of the State Crime Laboratory scientist who prepared the report was not admissible because the scientist's name was not included on the State's list of witnesses to be called at trial. We are without jurisdiction to consider this issue. "Our jurisdiction is limited to consideration of the legal points raised by enumerations of error. [Cits.]" *King v. State,* 133 Ga. App. 426, 429 (3) (211 SE2d 363). See *Phelps v. State,* 130 Ga. App. 344 (3) (203 SE2d 320).

6. Defendant contends that the trial court erred in denying his motion for mistrial.

The State called G. H. Greene, an investigator with the DeKalb County Police Department, who testified that he knew the defendant, that he knew where the defendant lived and that he had seen the defendant at an apartment complex known as Barron Estates. After this testimony, the defendant moved for a mistrial, arguing that Investigator Greene's testimony improperly placed the defendant's character into evidence. The trial judge denied this motion and instructed the jury as follows: "Ladies and Gentlemen, before we recessed I believe Investigator Greene testified that he had seen the defendant at Barron Estates at some time in the past. I have granted a motion to strike that testimony, or I will strike that testimony and instruct you to disregard it. That statement was incorrect. So you will just disregard that statement. We will continue now with the examination of Investigator Greene."

" 'A decision to grant a motion for mistrial lies within the sound discretion of the trial judge. His judgment will not be overturned on appeal without a showing of abuse of this discretion.' [Cit.]" *Lehman v. State,* 165 Ga. App. 15 (1), 16 (299 SE2d 88). However, where a State's attorney has through improper questioning introduced "immaterial" evidence which would likely prejudice the jury against the defendant, and a motion for mistrial has been made, the trial court

must either grant the motion or issue curative instructions in ruling the testimony out. See *Hamilton v. State*, 155 Ga. App. 799 (2), 800 (272 SE2d 763). In *Brown v. State*, 118 Ga. App. 617 (165 SE2d 185), this court restated the rule that " '(e)ach case presents a different combination of facts, and must therefore rest on its own bottom, keeping in mind that it is the highest duty to insure a fair and impartial trial to all parties, and not to allow to be injected into the proceedings any illegal element to the prejudice of the defendant's rights in a criminal case, where his liberty and perhaps his life are at stake.' [Cit.]" *Brown v. State*, 118 Ga. App. 617, 620 (1), supra.

Under the particular facts and circumstances of the case sub judice, we find that since the trial court took curative action by instructing the jury to disregard the "incorrect" testimony of Investigator Greene, the trial court did not abuse its discretion in denying the defendant's motion for mistrial.

7. In his seventh enumeration of error the defendant argues that it was error to fail to grant his motion for mistrial after the magistrate who conducted the defendant's preliminary hearing testified concerning statements made by the defendant at the preliminary hearing.

First, the defendant maintains that the magistrate's testimony violated his request for a *Jackson-Denno (Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908)) hearing. The record shows that, upon the defendant's request, the trial court conducted a *Jackson-Denno* hearing immediately following the magistrate's testimony. After the hearing, the court found that the defendant's statements were voluntarily made. Consequently, any error in failing to conduct a *Jackson-Denno* hearing prior to the magistrate's testimony was cured. See *Cofield v. State*, 247 Ga. 98, 106 (4), 109 (274 SE2d 530); *Parks v. State*, 254 Ga. 403, 405 (1), 406 (330 SE2d 686).

Next, the defendant argues that because he was not advised of his *Miranda* rights before he made statements to the magistrate, it was error for the magistrate to testify. We do not agree.

The record shows that the defendant made the statements while he was proceeding pro se at the preliminary hearing. The statements were not made pursuant to an in-custody interrogation. Consequently, *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694), was not applicable. See Ga. Crim. Trial Prac. (1985 ed.), § 5-10. The trial court did not err in allowing the testimony into evidence.

Finally, the defendant argues that the magistrate's testimony was not relevant. This argument is without merit. The magistrate testified that the defendant told him at the hearing that he could produce people "who would say he wasn't there at those times." ("alibi witnesses.") The defendant did not produce alibi witnesses at trial. It is not improper for the State to introduce evidence showing that the defendant at one time claimed to have alibi witnesses and then failed

to produce alibi witnesses at trial. See *Smith v. State*, 245 Ga. 205, 207 (4) (264 SE2d 15). The trial court did not abuse its discretion in allowing the magistrate's testimony.

8. In his eighth enumeration of error the defendant contends that the trial court erred in allowing the State to introduce evidence of a prior criminal transaction.

First, the defendant argues that the prior criminal transaction was inadmissible because it was dissimilar to the crimes charged. The trial court allowed the State to introduce evidence of the rape occurring on May 11, 1983. The court based its decision on the following findings of fact: "As to the [May 11, 1983] case, there are many similarities with the two offenses on trial. One is that it did occur or was initiated at the same general location; there was a robbery; a Caucasian of young age; and there were threats. There was also a weapon apparently in the [May 11, 1983] case, and I know there never was any weapon revealed in the cases on trial; but there was a threat in the [Count 4] case, according to [the Count 4 victim], that if she screamed he would cut her. [The May 11, 1983, incident] occurred approximately a year and a half prior to the cases on trial; her wallet was gone through; there was sodomy; she was threatened if she called the police; and there was a forced entry, even though it was an automobile as to [May 11, 1983, victim] and apartments as to the others. She was a stranger, as were [the Count 1 victim and Count 4 victim]. I think those are sufficient similarities to get that into evidence." The record supports these findings of fact and further shows that the May 11, 1983, victim identified the defendant as the man who raped her. "In *Felker v. State*, 252 Ga. 351 (314 SE2d 621) (1984), we held that evidence of prior criminal actions is admissible if relevant to the issues in the present case. The state must show, however, that the defendant was in fact the perpetrator of the prior action and that sufficient similarity exists between the prior action and the offense charged. *Walraven v. State*, 250 Ga. 401 (297 SE2d 278) (1982). Once this foundation is laid, evidence of prior crimes is admissible to show motive, intent, plan, identity, bent of mind or course of conduct." *Sport v. State*, 253 Ga. 689 (1) (324 SE2d 184). See *Moore v. State*, 254 Ga. 674, 676 (333 SE2d 605). The defendant having been identified as the perpetrator of the prior action we find there are sufficient similarities to make the evidence admissible for illustrating the defendant's motive, plan, scheme, bent of mind and course of conduct. See *Neal v. State*, 159 Ga. App. 450 (1) (283 SE2d 671).

Next, the defendant argues that it was error to allow evidence of the May 11, 1983, rape because the DeKalb County Grand Jury returned a *no bill* to an indictment where the defendant was accused of the May 11, 1983, rape during the July Term 1983. This argument is without merit. The case sub judice is not a case wherein a defendant

was acquitted of the prior criminal action as was the case in *Moore v. State*, 254 Ga. 674, supra, but is one in which the Grand Jury returned a *no bill*. Thus, in the case sub judice the *no bill* left unresolved the issue of whether the defendant in the case sub judice was in fact the perpetrator of the prior offense occurring on May 11, 1983. Moreover, this issue was resolved by the victim of the prior May 11, 1983, offense identifying the defendant here in the case sub judice as the individual who raped her on that prior occasion.

9. Enumerated errors 9, 11 and 14 are deemed abandoned pursuant to Rule 15 (c) (2) of the Rules of the Court of Appeals of Ga. *Lewis v. State*, 148 Ga. App. 16, 17 (3) (251 SE2d 18); *Stewart v. State*, 254 Ga. 233, 235 (5) (326 SE2d 763).

10. Enumeration 10 sets out that the trial court erred by allowing into evidence an in-custody statement defendant made to Investigator C. E. Thacker of the DeKalb County Police Department. Investigator Thacker testified that he advised the defendant that he was going to be placed in a physical lineup. In response to this information Thacker testified that the defendant refused to be in the lineup. According to Thacker, the defendant said, "I want to look at the victims before I agree to stand up there." Thacker also testified that after he advised the defendant that he was a suspect in several rapes and burglaries in the Clarkston, Avondale and Scottdale area, the defendant told him: "You're going to have to force me." At this point, defense counsel objected on the grounds that the court had not conducted a *Jackson-Denno* hearing prior to Thacker's testimony. The defense moved for a mistrial and the trial judge responded: "All right. Let's have a hearing on it." After the hearing, the trial court found that the defendant's "[s]tatements were made, voluntarily and spontaneously and not in response to any questions or interrogation by Mr. Thacker; but Mr. Thacker merely advised Mr. Williams that he was going to place him in a lineup, and then Mr. Williams made these statements of his own free will. So I'll deny the motion and overrule the objection and let the testimony in."

First, the defendant argues that the statements were introduced in violation of his request for a *Jackson-Denno* hearing. This argument is without merit. As stated in Division 7 of this opinion, any error in failing to hold a *Jackson-Denno* hearing was cured when such a hearing was held immediately after Thacker's testimony. *Cofield v. State*, 247 Ga. 98, 106 (4), 109, supra; *Parks v. State*, 254 Ga. 403, 406 (1), supra.

Next, the defendant asserts that because he was not advised of his *Miranda* rights before he made the statements to Officer Thacker, the statements were erroneously admitted into evidence. We do not agree. "Interrogation" as it relates to *Miranda v. Arizona*, 324 U. S. 436, supra, applies "to any words or actions on the part of the police

. . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U. S. 291, 292 (100 SC 1682, 64 LE2d 297). In the case sub judice, the circumstances surrounding the defendant's statements to Officer Thacker could not reasonably be construed to fit within the above-described definition of interrogation. Consequently, *Miranda* was not applicable. The trial court did not err in allowing the testimony into evidence.

Third, the defendant argues that the testimony relating defendant's statements was introduced in violation of OCGA § 17-7-210. OCGA § 17-7-210 in pertinent part provides: "(c) Failure of the prosecution to comply with a defendant's timely written request for a copy of his statement, whether written or oral, shall result in such statement being excluded and suppressed from the prosecution's use in its case-in-chief or in rebuttal." This argument is not supported by the record. Upon defense counsel's own admissions at trial, the State complied with OCGA § 17-7-210.

We have found the defendant's final argument in this enumeration of error to be wholly without merit. The trial court did not err in admitting into evidence Investigator Thacker's testimony concerning in-custody statements made by the defendant.

11. In his twelfth enumeration of error the defendant contends that the trial court violated his constitutional right to confront a witness because the court sustained an objection made by the State to a question asked of the witness by the defense on cross-examination. This argument is without merit.

The record shows that after the trial court sustained the State's objection, the defendant chose not to pursue further cross-examination of the State's witness. This was a tactical decision by defense counsel. There is no evidence showing that the trial court "cut off" the defendant's right to further cross-examine the State's witness. In any event, we have examined the record and find that the testimony which defense counsel was attempting to elicit from the witness, was later admitted into evidence by the defense without objection by the State. Consequently, any error in excluding the evidence was harmless.

12. Next, the defendant contends that the trial court erred by not granting his motion for directed verdict because the evidence was insufficient to send the "kidnapping with bodily harm" of the Count 5 victim issue to the jury. We do not agree. OCGA § 16-5-40 (a) provides: "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." In the case sub judice, the evidence showed that the Count 5 victim was forced to get into several rooms against her will. This is sufficient evidence to support a kid-

napping conviction. "[U]nlawful asportation, however slight, is sufficient to support a kidnapping conviction. [Cits.]" *Chambley v. State*, 163 Ga. App. 502, 503 (1), 504 (295 SE2d 166). See *Helton v. State*, 166 Ga. App. 662 (1) (305 SE2d 592). Further, we find "that there was sufficient evidence introduced by the State at trial to authorize the jury in convicting the appellant of kidnapping with bodily injury to the victim." *Peek v. State*, 239 Ga. 422, 427 (238 SE2d 12). See *Lassiter v. State*, 175 Ga. App. 338, 340 (4) (333 SE2d 412).

The defendant's argument that the robbery and burglary charges merged is without merit. " '[N]either [robbery nor burglary] is a lesser, or included, offense of the other as a matter of law or fact, for the facts must differ to convict under the statutes. [Cits.]' *Moore v. State*, 140 Ga. App. 824 (2) (232 SE2d 264) (1976)." *Luke v. State*, 171 Ga. App. 201, 202 (1) (318 SE2d 833).

13. In his fifteenth enumeration of error the defendant argues that the trial court erred in forcing him to proceed with a motion for new trial without a transcript. The hearing on the motion for new trial was conducted less than two weeks after the jury's verdict. The same attorney who represented the defendant at trial also represented him at his motion for new trial. Since the evidence at trial was fresh in defense counsel's memory, the trial court did not err in conducting the hearing on the motion for new trial prior to preparation of the transcript. *McClure v. State*, 163 Ga. App. 236, 237 (2) (293 SE2d 496). See OCGA § 5-5-40.

14. In his final enumeration of error the defendant argues that the trial court erred in failing to grant a new trial after it was discovered that the jury had access to the Criminal Code of Georgia and a handwritten sentence summary sheet during their deliberations.

The transcript of the hearing on the defendant's motion for new trial showed that on the third day after the jury returned its verdict, defendant's counsel (a public defender), along with Ms. Bedingfield (another public defender), and an assistant district attorney, discovered a paper on the table in the jury room listing criminal offenses and summarizing possible punishments for the various crimes in Georgia. Ms. Bedingfield testified that she prepared the two-page sentence summary sheet and said that she used it "as a quick reference guide to help defendants know what their sentences might be" when she counseled with a client. Also found in the jury room was Ms. Bedingfield's Title 16 of the Official Code of Georgia (Volume 14 — Crimes & Offenses). Ms. Bedingfield testified that her criminal code volume was discovered "up on the back shelf in the jury room in an area where ordinarily I would not have noticed it."

"The burden is upon the party challenging the legality of a ruling to prove error by the record." *Conley v. State*, 172 Ga. App. 884, 885 (2) (324 SE2d 750). Furthermore, "[i]njury as well as error must be

shown by one who claims irreparable prejudice and this must be shown on the record." *Abbott v. State,* 172 Ga. App. 70, 74 (321 SE2d 808). See *Collier v. State,* 244 Ga. 553, 559 (261 SE2d 364). Defendant has failed to demonstrate any such error which has harmed him. Therefore, this enumeration is without merit.

*Judgment affirmed. Banke, C. J., and Benham, J., concur.*

DECIDED MARCH 18, 1986 —
REHEARING DENIED APRIL 3, 1986 —

*Alden W. Snead,* for appellant.

*Robert E. Wilson, District Attorney, Barbara B. Conroy, John H. Petrey, Assistant District Attorneys,* for appellee.