## 72048. ISBELL v. THE STATE.
(346 SE2d 857)

McMURRAY, Presiding Judge.

The defendant was accused under a multi-count indictment by the DeKalb County Grand Jury of the following offenses: Count 1, malice murder of "J. G. L."; Count 2, felony murder of "J. G. L."; Count 3, aggravated assault of "J. G. L."; Count 4, aggravated assault of "J. H."; Count 5, possession of cocaine; and, Count 6, possession of less than one ounce of marijuana. The defendant was tried before a jury beginning on May 17, 1985. The evidence adduced at trial disclosed the following:

On January 31, 1985, between 7:50 and 8:45 p.m., "J. G. L.," age 14, and "J. H.," age 15, broke into the defendant's apartment by climbing through an unlocked window. Upon realizing the defendant was returning home, the boys tried to escape through the front entrance of the apartment. However, the door was locked from the outside, so the boys hid in a laundry closet, squatting on top of the washer and dryer.

Upon entering the apartment, the defendant saw that his stereo equipment was stacked by the opened window. The defendant then went to his automobile and obtained a handgun. The defendant returned to the apartment and searched for intruders, discovering the boys in the laundry closet. The defendant pointed the gun at "J. H." and inquired as to why the boys were in his apartment. Angered by their response, the defendant began striking the boys with his fists and the pistol. During the confrontation, the defendant grabbed "J. H." and placed the gun to the boy's head. "J. H." pushed the gun

away. The defendant then stepped back and hit "J. G. L." with his left hand. "J. H." saw the defendant's right hand come up and then he heard the gun go off. "J. G. L." went limp and fell to the floor. "J. H." ran out of the apartment and the defendant went to a nearby apartment and requested his neighbor to call the police and an ambulance. (The defendant did not have a telephone in his apartment.) The first police unit arrived on the scene at approximately 8:47 p.m. After an initial investigation, the defendant was handcuffed and taken to the police station. While at the station, the defendant gave the following statement: "I left home about ten 'til 8 or so. I was going to run some errands and call some friends. I don't have a phone at home. I had gone to Kroger and a service station and at Tenneco. I got back home about 8:30 or somewhere around there. I pulled around back and parked in the parking lot. When I walked up to my patio door, I saw the window to the bedroom was open. The lower part was raised up. I thought 'Oh, hell somebody's got in here again.' I had had someone go in once before but I couldn't find anything gone. I never did report it. I went on in and saw my stereo equipment stacked by the open window. I assumed I had caught somebody there cause the stuff was still there. I ran back out to the car and got my pistol off the front seat. It's a .22 revolver 9 shot. I don't know what kind. I've had it for a couple or 3 days. I bought it off a guy for $30 at Witchburners Lounge. No, I bought it from Douglas Russel yesterday morning. I traded him a watch for it. I just didn't want to get him in trouble. So I went back in and checked the apartment. I didn't hear any noises. I checked the downstairs and didn't find anybody. I went up the steps and checked the living room. I looked and saw the bathroom was empty and then I went to check the little room where the washer and dryer are. It's more like a big closet set up for a washer and dryer. It's got folding doors that close over it. I went over and opened the left door first cause I had the pistol in my right hand. As I opened it, I saw the one kid, whatever his name is, crouched on top of the dryer. I pointed the pistol at him and told him to 'Don't move.' He says, 'Don't shoot, I'm here with ["J. G. L."] and gestured behind the other door. I opened the right door and saw ["J. G. L."] crouched there. They started trying to lay a story on me about why they were in there. That made me really angry because I knew what they were doing. I thought I would go ahead and teach them a lesson by knocking hell out of them, so I started slapping them both. I was using both hands to hit them both. I may have had my fist doubled up some, too. They couldn't get out because I was blocking the door. When I was hitting them with my right hand, I still had the pistol in it. ["J. G. L."] tried to get past me or come at me and I hit him on the head with my right hand. I tried to hit him with the butt of the pistol on the side of the head. He must have turned his head as he came off

the washer and I hit him in front. The gun went off. Evidently I squeezed the trigger. I don't remember. The other kid said, 'oh G____ d____', and ["J. G. L."] fell. The other kid ran out because my attention was on ["J. G. L."]. ["J. G. L."] was moaning and breathing kind of labored. I put the gun on the couch and went across the court and tried to find a phone. The last apartment or the first coming in the people were home and I had him call an ambulance and the police. I went to ["J. G. L.'s"] mother's and told her what had happened. We all went back up there to my place. My neighbor, Ace I call him, come in and saw the gun on the couch. He took it, dissembled it, and layed it on the floor in my living room. I went in to see about ["J. G. L."] and I put a towel under his head. Then I tried to quiet his mother. Then the police and ambulance showed up." After dictating this statement to the interviewing officer, the defendant stated that "he . . . just wanted to teach them [the boys] a lesson."

At approximately 12:05 on the night of the shooting, police obtained a search warrant for the defendant's apartment and at approximately 1:00 that night the police executed the warrant. Upon entering the defendant's bedroom, the officers observed a suspected marijuana cigarette lying on the dresser. (The cigarette was identified as marijuana at trial.) They also found an open briefcase on the bed. The briefcase contained a piece of mirror, a white powdery substance, a vita-blend plastic bottle, and a sifting device which contained a white powdery residue which was identified at trial as cocaine.

From this and other evidence adduced at trial, the defendant was convicted of the following offenses: voluntary manslaughter of "J. G. L."; aggravated assault of "J. H."; possession of cocaine; and possession of less than one ounce of marijuana. The defendant filed a motion for new trial on June 19, 1985. The trial court denied this motion and the defendant now appeals. *Held*:

1. In his first enumeration of error, the defendant contends that the trial court erred in denying his pre-trial motion to suppress the cocaine and marijuana which were seized from his apartment pursuant to the search warrant. The defendant argues that there was no probable cause for searching his entire apartment because all of the instrumentalities of the shooting and the burglary had been recovered during the initial police investigation. This argument is without merit.

The evidence adduced at the motion to suppress hearing showed that the initial police investigation was not completed at the time the warrant was executed. The police arrived at the crime scene at approximately 8:47 p.m., discovered the victim of a shooting and observed evidence of an apparent burglary which had taken place at the apartment. Under these circumstances, the police were authorized in making a prompt warrantless search of the defendant's entire apartment in order to secure the crime scene. See *Mincey v. Arizona*, 437

U. S. 385, 392-393 (98 SC 2408, 57 LE2d 290); *Gilreath v. State*, 247 Ga. 814, 821 (1) (279 SE2d 650); and, Daniel, Ga. Crim. Trial Prac. (1985 ed.), § 4-44. However, in an abundance of caution, the chief investigating police officer obtained a warrant, supported by his own affidavit, for a more thorough search and documentation of the crime scene. The warrant was executed less than five hours after the shooting and was supported by sufficient facts to authorize a finding of probable cause for a more thorough search of the apartment. (More specifically, the officer's affidavit showed that a crime or crimes had recently been committed at the defendant's apartment and that a search of the premises would reveal evidence of the crimes. Also, the affidavit set forth specific items being sought in the search.) The fact that the police officers discovered what appeared to be objects of an unrelated crime in "plain view" in the defendant's bedroom does not require exclusion of that evidence at trial. See *Whittington v. State*, 165 Ga. App. 763, 764 (302 SE2d 617); and 37 Mer. L. Rev. 179, 187-190. Consequently, the trial court did not err in denying the defendant's motion to suppress the marijuana and cocaine.

2. In his second enumeration of error, the defendant contends that the trial court erred in denying his motion to sever those counts of the indictment, which related to the charges of possession of controlled substances, from the murder and aggravated assault charges. "Offenses may be 'joined for trial when they are based (1) "on the same conduct" or (2) "on a series of acts connected together" or (3) on a series of acts "constituting parts of a single scheme or plan." (Cit.) If offenses are joined for any of these three reasons, the defendant does not have an automatic right of severance; instead, the trial judge may grant severance if it is necessary "to achieve a fair determination of the defendant's guilt or innocence of each offense." (Cit.)' *Haisman v. State*, 242 Ga. 896, 900 (252 SE2d 397) (1979)." *Fluker v. State*, 171 Ga. App. 415, 417 (2) (319 SE2d 884).

In the case sub judice, the existence of the controlled substances in the defendant's home explained his conduct in failing to call the police when he discovered that a crime was being committed in the apartment. This was sufficient evidence showing a common scheme or plan authorizing the trial court's denial of the defendant's motion to sever. Further, from the evidence presented at trial and from the outcome of the trial as reflected in the verdict, it is apparent that the trier of fact understood the separate crimes charged and was able to distinguish evidence relating to each of the offenses. Consequently, the trial court did not abuse its discretion in denying the defendant's motion to sever. See *Coats v. State*, 234 Ga. 659, 662 (4) (217 SE2d 260); and *State v. Santerfeit*, 163 Ga. App. 627 (295 SE2d 756).

3. "Enumerated errors [3 and 4] are deemed abandoned pursuant to Rule 15 (c) (2) of the Rules of the Court of Appeals of Georgia.

*Lewis v. State,* 148 Ga. App. 16, 17 (3) (251 SE2d 18); *Stewart v. State,* 254 Ga. 233, 235 (5) (326 SE2d 763)." *Williams v. State,* 178 Ga. App. 581 (9) (344 SE2d 247).

4. Next, the defendant contends that the trial court erred in refusing to give two of his requests to charge. This argument is without merit.

A review of the record shows that the trial court's instruction substantially covered the same principle requested by the defendant. "[T]he failure of the trial judge to give a requested charge in the exact language requested is not grounds for reversal where the charge given substantially covers the same principle. [*Caldwell v. State,* 167 Ga. App. 692, 695 (6) (307 SE2d 511).]" Daniel, Ga. Crim. Trial Prac. (1985 ed.), § 24-1.

5. In his final enumeration of error, the defendant contends that the trial court erred in failing to grant his motion to continue the hearing on his motion for new trial. The defendant's attorney argues that he was not counsel for the defendant prior to filing the motion for new trial and that he did not have access to transcripts of the hearings conducted on the defendant's pre-trial motions.

A review of the record shows that defense counsel had approximately four months to prepare for the hearing on his motion for new trial. During this time, he had access to the entire trial transcript and all matters of record filed with the DeKalb County Superior Court Clerk's office. Even though the defendant's counsel may not have had access to the transcripts of the pre-trial hearings, he did have ample time to consult with his client, study the evidence presented at trial and review all of defendant's written pre-trial motions. Consequently, we find that the trial court did not abuse its discretion in denying defendant's motion to continue. See OCGA § 5-5-40; *McClure v. State,* 163 Ga. App. 236, 237 (2) (293 SE2d 496).

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED JUNE 16, 1986 — ▮▮▮▮▮▮▮

*Alden W. Snead,* for appellant.

*Robert E. Wilson, District Attorney, Susan Brooks, Madeline S. Griffin, Assistant District Attorneys,* for appellee.