A91A0335. PARKS v. THE STATE.
(406 SE2d 229)

ANDREWS, Judge.

Defendant appeals his conviction of six counts of armed robbery and one count of kidnapping resulting from a string of robberies between September 23, 1988, and October 13, 1988. Defendant was acquitted of one robbery and the jury was unable to reach a verdict on two others.

Viewed in favor of the verdict, the evidence on Count 2 was that on September 23, around 9:00 p.m. a man entered Barry's Bottle Shop with an onion bag over his head and what looked like a gun, partially wrapped in a plastic bag, and demanded money. The onion bag was mesh and the clerk could see the man's features and he identified defendant from a photographic lineup and at trial.

On September 30, the Flash Food Store (Count 3) was robbed around 10:00 p.m. by a man who entered the store with a shirt wrapped around his head, obscuring his features. He had a gun and was approximately six feet tall, weighing 200 pounds. This robbery was videotaped. Britt, the clerk, also worked the morning shift at another convenience store, the Stop and Shop (Count 4). She was there the next morning around 7:00 a.m. when a man dressed the same and with the same shirt over his head as the Flash Food robber entered the store and demanded money. This time, he lifted the shirt revealing some facial features. Although Britt was not positive about the photo spread, she identified defendant in court as the robber. The robber in the videotape had a scar on his left arm, as did defendant.

Counts 5 and 6 were the counts upon which no verdict was reached. The evidence was that on October 3 between 6:30 and 7:00

a.m., the Corral Food Store was robbed by a man with a bag over his head. The clerk was unable to make an identification. On October 6, a Domino's Pizza was robbed between 8:00 and 9:00 p.m. by a man who grabbed the manager from the rear, placed a gun in his back, and demanded money. While the manager was unable to see the robber, he heard the crinkle of a plastic bag worn by the robber. The robber was seen by a delivery man before the incident, reclining on the delivery vehicle. A fingerprint matching defendant's was found on the vehicle. The delivery man said a picture of defendant which appeared in the newspaper after his arrest looked like the robber.

On October 11, between 9:00 and 9:30 p.m., the West End Package Store (Count 7) was entered by a man wearing a red bag, split up the middle, over his face. He carried a .25 caliber pistol over which he had a little rag. The clerk identified defendant as the robber at trial and the owner, also present during the robbery, identified defendant from the photo spread.

On October 13, between 7:00 and 8:00 p.m., Tipplers Package Store (Count 8) was robbed by a man wearing a Payless Shoe Store bag over his head with a white sock over his hand partially concealing what appeared to be a handgun. When he entered the store, he grabbed Sanford, a customer, from behind. He then got money from Sanford (Count 10) and from the store. When he reached over the counter to get the store's money, the bag nearly slipped off his face and the owner saw him from the front. He identified defendant both from the photo spread and in court. As the robber was leaving the store, he pulled Sanford with him to the door, shoved him back inside, and ran (Count 1, kidnapping).

Also, on October 13, near midnight, a man with a cloth bag over his head and a weapon partially covered with a cloth entered the rear door of the Pizza Hut (Count 9) and robbed it, taking the manager with him to the rear door, where he pushed him back inside and ran. Defendant was acquitted of this count.

All of the robbers appeared to be on foot and ran from the businesses after the incidents.

1. The first enumeration is that the court erred in not granting defendant's motion to sever Counts 2, 3, 4, 5, 6, & 7 from the indictment for separate trials. The premise for the motion was that the offenses did not establish a pattern, other than the type of offense charged and the accused. In support of lack of similarity, defendant points to the fact that three different types of establishments, i.e., restaurants, liquor stores and convenience stores, were the victims and that in some instances a facsimile was used, in others a real gun. Nonetheless, defendant did not seek to sever the Pizza Hut and Tipplers counts from each other.

"Where criminal offenses are joined solely on the ground that

they are of the same or similar character, the defendant has a right to have the offenses severed. *Dingler v. State*, 233 Ga. 462 (211 SE2d 752). However, where the offenses are so similar that they show a common scheme or plan or have an identical modus operandi, severance is discretionary with the trial court. . . . '(W)here the modus operandi of the perpetrator is so strikingly alike, that the totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joined — subject to the right of the defendant to a severance in the interests of justice. [Cits.].' [*Davis v. State*, 159 Ga. App. 356 (1) (283 SE2d 286) (1981)] at 357." *Mack v. State*, 163 Ga. App. 778, 779 (1) (296 SE2d 115) (1982).

Here, the similarities in the robberies, i.e., the robber's method of obscuring his face and weapon or facsimile, the fact he appeared to arrive and leave on foot, the timing of the robberies (either early morning or in the evening, none during the standard work day), and the fact they all occurred within a two-week period would justify the incidents' admission in each trial even if severed, taking them out of the category of joinder *solely* because they are of a same or similar character. *Wilson v. State*, 188 Ga. App. 779, 780 (1) (374 SE2d 325) (1988). There was no error.

2. Defendant contends that the admission into evidence of the photo identification sheets filled out by three of the victims after viewing the photo spread was error because the sheets constituted a "continuing witness." The sheets contained a row of six numbers, one of which the victims circled if they made an identification. The sheet signed by the owner of the West End Package Store also contained the comment that "[i]t has to be #2 because the mustache and lips matched the robber. . . ."

" 'In Georgia the "continuing witness" objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.' [Cit.] This 'continuing witness' objection usually concerns testimonial documentary evidence, such as [an] affidavit . . ., and depositions of [sic] interrogatories. [Cit.] However, the objection has also been applied to unsworn, written dying declarations and written confessions or statements of criminal defendants, on the grounds that such statements are the equivalent of depositions. [Cits.] The photo lineup document cannot reasonably be categorized as the functional equivalent of a deposition. This court has previously viewed such lineup documents 'not as statements of the witnesses, but rather as tools to explain the photographic lineup display which was shown to the witnesses before

trial. . . .' *Brewton v. State*, 174 Ga. App. 109, 111 (329 SE2d 270) (1985)." (Indention omitted.) *Kenney v. State*, 196 Ga. App. 776, 777 (2) (397 SE2d 131) (1990).

Assuming, without deciding, that the additional written statement added to the one document is "written testimony," we find any error in allowing it to go to the jury is harmless. Here, the West End owner testified and was cross-examined thoroughly by defendant about the comment which he added to the form. In addition, the clerk in the store that night who handed the robber the money had not previously seen the photo spread, but positively identified defendant at trial. The jurors had the photo spread before them so they could evaluate both its fairness and whether defendant was, in fact, the "#2" referred to on the forms. We find it highly improbable that the one sentence statement contributed to the judgment in light of all the evidence. *Brewton*, supra at 111 (2).

3. Counts 5 & 6 (Corral Foods and Domino's), upon which the jury was unable to reach a verdict, involved tennis shoe prints at the scenes, including one removed from the back of the shirt of the Domino's Pizza manager. He was made to lie on the floor while the robber put his foot on the manager's back while reaching over him to the cash drawer. The tread from the shoe print was similar to that of a pair of tennis shoes seized from defendant's residence pursuant to a search warrant obtained after defendant initially consented to the search and then withdrew it. The third enumeration contends it was error to allow into evidence defendant's withdrawal of the consent, because it allowed evidence of defendant's exercise of his constitutional rights to be used against him.[1]

During the investigation, the officers went to question defendant at the trailer where he was staying with his sister. Upon arriving, an officer noticed footprints in the driveway similar in tread design to those found at the Corral Food Store and on the Domino's manager's shirt. The officers were let in the trailer by defendant. They explained that they were investigating the robberies and asked for permission to search the house. Defendant consented to the search and a consent to search form was completed for his signature. At that point, defendant refused to sign the form and told the officers to obtain a search warrant, which they did, finding the tennis shoes and the pneumatic drill.[2]

---

[1] While defendant here relies upon two provisions of the Georgia Constitution, these were not relied upon below. Only the federal Fourth Amendment was raised and that is all that will be considered here. *Iglesias v. State*, 191 Ga. App. 403, 404 (381 SE2d 604) (1989).

[2] The drill was used by defendant on his job and was introduced into evidence. It was the State's theory that it could have been used, wrapped in a rag, as a facsimile gun. Some of the victims were unable to say a gun was used because the object used was wrapped. A nickel plated .25 caliber pistol was identified in one robbery and such a gun was owned by defend-

Pretermitting the issue of whether evidence of withdrawal of consent to search rises to the level of impermissible comment upon exercise of Fourth Amendment rights, compare *Howard v. State*, 237 Ga. 471, 473 (228 SE2d 860) (1976) (impermissible to charge jury that silence is a tacit admission when silence is constitutionally protected under the Fifth Amendment) with *Benavides v. State*, 193 Ga. App. 737, 738 (388 SE2d 886) (1989) (withdrawal of consent to search in evidence to explain obtaining of search warrant and circumstances of arrest), any such error here was harmless. In so deciding, we consider "the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt. [Cit.]" *Hill v. State*, 250 Ga. 277, 283 (4) (295 SE2d 518) (1982). Here, the jury was unable to reach a verdict on the two counts involving the shoe prints, indicating they did not hold against defendant his request that the officers obtain a search warrant. There was no shoe evidence in the counts upon which defendant was convicted and it is difficult to believe the jury used the search warrant request against defendant on these counts and not the ones to which the search directly related. As set out above, there was videotape of one robbery, and photo and in-person identification of defendant as the robber.

4. During the investigation, the videotape was shown to defendant's wife and sister. The officers present testified that the sister "stared at the picture . . . dropped her head, and shook it and got up." The wife "stared at it and then, all of a sudden, her eyes just filled with tears." Defendant objected during the sister's testimony that her physical reaction to the videotape was not relevant and that it got to the "question of asking some witness what is their opinion as to whether or not the video shows the defendant. . . ." The court ruled that testimony of their physical reactions was admissible for whatever weight the jury wished to give it. During the wife's testimony, defendant renewed the "same objection." The sister testified she had no such reaction and said she told the officer when she viewed the tape that the man was not her brother. The wife also testified that she told the officers it was not her husband and that she became upset because of "the welfare of my children, knowing something like this was happening, or being accused of."

It cannot be disputed that the identity of the man in the videotape was an issue at trial. Any evidence which bore upon that issue directly or indirectly was admissible. OCGA § 24-2-1; *Rosenthal v. Hudson*, 183 Ga. App. 712, 715 (9) (360 SE2d 15) (1987). Despite defendant's argument to the contrary, the physical reactions of a person

ant's sister and available to him in the trailer.

do not amount to an opinion of that person. Here, they were presented to the jury without conclusion, leaving the jurors to draw their own. "Observed emotional state" is appropriately considered by the jury. See *Gray v. State*, 151 Ga. App. 684, 686 (4) (261 SE2d 402) (1979). Even if the reactions are deemed to be opinions, identity is an appropriate matter for opinion evidence and this objection is without merit. *Garrett v. State*, 141 Ga. App. 584, 586 (3) (234 SE2d 161) (1977).

5. During the sister's and wife's testimony presented during defendant's case, they were asked to explain their conduct while they watched the videotape. When they testified regarding statements made by the detective during the video, the State's objections that the question called for hearsay and improper conclusions were sustained.

Defendant's final enumeration is that the court erred "in refusing to allow appellant's sister and wife to explain what they said to the police officers who testified about their reactions to the videotape."

After the objection was voiced, defendant was asked by the court specifically what it was he was seeking to elicit from the wife. In response, the following transpired:

"Mr. Geeter [defense counsel]: She's going to get upset because she thought that they were trying to make her admit something that she didn't think was right with one of those . . . The Court: Well, she can say that. I'll let her say that that's why she got upset. Mr. Martinez [prosecutor]: Because then if she says that, she's saying that she viewed the tape and it wasn't him. The Court: She's got to have a right, though to explain why she did, if you've gotten into the fact that she got upset. Now, I want you to stay away as much as possible without drawing any conclusion on hearsay. I don't agree at all with your analysis that this explains conduct thing in view of this *Momon* [*v. State*, 249 Ga. 865 (294 SE2d 482) (1982)] case, but I think in fairness I've got to let her explain the inference that's been drawn. Mr. Geeter: Okay."

Both witnesses were allowed to testify to what they said to the detectives. They also repeatedly stated that they told the police that the man was not defendant. Therefore, the enumeration presents nothing for our review. *Hall v. State*, 189 Ga. App. 267, 268 (2) (375 SE2d 460) (1988). The argument in support of the enumeration contends that the entire conversation between the officers and the witnesses was admissible. An enumeration may not be expanded by argument in the brief and this presents nothing for our review. *Martinez-Rodriguez v. State*, 195 Ga. App. 491, 492 (393 SE2d 748) (1990).

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED MAY 3, 1991 —
REHEARING DENIED MAY 22, 1991 —

Shane M. Geeter, for appellant.
Joseph H. Briley, District Attorney, Al C. Martinez, Jr., Assistant District Attorney, for appellee.