## A99A2028. GRIFFIN v. THE STATE.
### (531 SE2d 175)

SMITH, Judge.

Stacey Darnell Griffin was convicted of kidnapping, robbing, and raping two different women within a span of less than thirty-six hours in the same isolated area in Buford. Following the denial of his motion for new trial, Griffin brought this appeal in which he asserts 13 enumerations of error. Having determined no error occurred, we affirm.

Viewed in a light most favorable to the verdict, the evidence showed that Griffin tricked the first victim, T. S., into giving him a ride to another person's house. Realizing that she had been deceived, T. S. attempted to make a turn, but Griffin screamed at her, grabbed her neck, and began choking her. Griffin then directed T. S. to drive to Cole Road. When she did not comply, he rammed the gearshift into park and told her he was going to kill her. Begging for her life, she offered Griffin the truck and her purse. He rejected those things and told her he would take what he wanted. Griffin removed the victim's shorts and panties and forced her to have sexual intercourse. When Griffin finished raping her, he ordered her out, then sped off in the victim's truck, leaving her stranded wearing only her socks and tennis shoes. The victim ran into a nearby factory, where workers gave her some cloth in which to wrap herself and called 911. Police took the victim to the Gwinnett Rape Crisis Center.

Less than 36 hours later, Griffin managed to obtain a ride from his next victim, C. C., who was driving to Buford accompanied by her ex-boyfriend, Johnny Vickers, to procure drugs. Griffin directed them to an area of Buford which took them toward Cole Road where he had raped the first victim. Griffin suddenly yanked up the emergency brake, forcing the vehicle into a skid. Griffin pushed the victim's head into the steering wheel and threatened to kill her unless Vickers left. When Vickers ran for help, Griffin directed the victim where to drive. After inquiring whether she had ever been raped before, Griffin ordered her to stop the vehicle and strip, then proceeded to rape her on the hood of the car. During the attack, the victim complained that the hood was extremely hot and was burning her skin. Just as he had done the night before, Griffin left the victim stranded

without any clothes while he sped away in a stolen car. Screaming, the victim managed to flag down a passing motorist, and police were summoned.

Meanwhile, Vickers described the perpetrator to police. Based on that description, police suspected Griffin. When Vickers was shown a photo lineup, he selected Griffin's photograph. Another photo lineup was created, and the first victim also identified Griffin as the rapist. Three or four days after the first rape, police discovered the missing truck with the victim's clothes and purse inside. The second victim also identified Griffin as her assailant.

Both victims were examined at the Gwinnett Rape Crisis Center, and both had injuries consistent with being raped. Numerous photographs of T. S.'s injuries documented scratches and bruises on her arms and legs and red marks encircling her neck. Two days after this crime spree, after a chase involving the second vehicle, the stolen car crashed into a ravine, but its driver managed to escape. Investigators dusted the hood for fingerprints and lifted prints that matched Griffin's prints.

1. Griffin contends the trial court erred by refusing to grant his motion to sever the counts.

The decision to grant a motion to sever the trial of criminal offenses rests within the sound discretion of the trial court. *Williams v. State*, 178 Ga. App. 581, 584 (1) (344 SE2d 247) (1986). After balancing the interests of the State and those of the accused, a trial court may properly deny a motion to sever when:

> the crimes alleged were part of a continuous transaction or series of similar transactions conducted over a relatively short time, and from the nature of the entire transaction, it would be difficult to present to a jury evidence of one of the crimes without also referring to or permitting evidence of the other [crimes].

(Citations and punctuation omitted.) *Rocha v. State*, 234 Ga. App. 48, 53 (5) (506 SE2d 192) (1998).

Here, the facts surrounding the two rapes are so similar that even if the two cases had been severed, each would have been admissible in the other case as evidence of a similar transaction. *Weaver v. State*, 206 Ga. App. 560, 561 (1) (426 SE2d 41) (1992). The trial court did not abuse its discretion in denying the motion to sever. *Redding v. State*, 219 Ga. App. 182, 184 (3) (464 SE2d 824) (1995); see *Cooper v. State*, 253 Ga. 736, 737-738 (3) (325 SE2d 137) (1985).

2. Griffin claims the trial court erred by striking a juror for cause. We disagree.

Before a juror can be disqualified for cause, it must be

shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. [Cits.]

*Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993).

On the morning of the second day of voir dire, a venireman, who was a retired police officer, gave a note to the bailiff. In this note, he expressed his dissatisfaction with the way the judge was handling the case and voiced his prejudice against the judge. After counsel and the judge met in chambers with him, the trial court observed that this prospective juror believed that due to the court's refusal to allow defense counsel to pose hypothetical questions about a defendant's right not to testify, Griffin "was not going to get a fair trial." The juror conceded that this feeling would carry through the trial and affect his ability to be fair and impartial. Upon further examination by counsel, he confirmed that he did not think the defendant had been treated fairly by the court. He asked to be excused from the case and acknowledged that his feelings would affect his impartiality. In light of this juror's apparently fixed opinion that the judge had not been fair to the defendant, we cannot agree that it was error to excuse this juror for cause. *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993) (decision to strike a juror for cause rests within the sound discretion of the trial court).

3. Griffin contends the trial court erred in refusing to excuse three prospective jurors for cause. We disagree. Absent proof of a manifest abuse of discretion, a trial court's refusal to strike a juror for cause will not be disturbed. *Scott v. State*, 193 Ga. App. 577, 578 (2) (388 SE2d 416) (1989). Moreover, "[t]he fact that a potential juror may have some doubt as to his impartiality, or complete freedom from all bias, does not demand, as a matter of law[,] that the juror be excused for cause." (Citations and punctuation omitted.) *Wilson v. State*, 220 Ga. App. 487, 488 (1) (469 SE2d 516) (1996). See *McClain v. State*, 267 Ga. 378, 380-381 (1) (a) (477 SE2d 814) (1996).

First, Griffin contends the court should have excused for cause a civilian employee of the City of Lilburn Police Department, because she exhibited a hostile attitude toward defense counsel and himself. The transcript, however, indicates that this juror expressly denied that her job would affect her ability to be fair and impartial. Next, Griffin claims the trial court erred in refusing to excuse for cause a registered nurse who stated that as the mother of two daughters similar in age to the victims' ages, she would probably be more sympathetic to the victims. But this juror also stated that she thought she would be fair as a juror and could base her decision solely on the evidence. Finally, Griffin asserts the trial court erred in refusing to

excuse for cause a juror who expressed concern about having to listen to graphic details of sexual crimes. While this juror did initially voice some doubt about her ability to be fair and impartial in a sexual violence case, she later testified that she could put aside her feelings of aversion and decide the case based on the evidence. The trial court did not manifestly abuse its discretion in refusing to excuse for cause any of these three jurors. *Scott*, supra.

4. Griffin contends the trial court erred in admitting his videotaped statement into evidence because it improperly placed his character in issue. Griffin claims that although State's Exhibit 34 "was severely edited by the district attorney with the approval of the judge," the tape was objectionable in any form. In arguing for the exclusion of this evidence, Griffin does not contest the voluntariness of his statement, only that it impermissibly injected his character into the trial. OCGA § 24-2-2.

As a general rule, the admission of evidence is a matter resting within the sound discretion of the trial court, and unless an abuse of that discretion is shown, the court's decision will not be disturbed. *Cook v. State*, 221 Ga. App. 831, 833 (3) (472 SE2d 686) (1996). See OCGA § 24-2-2. When portions of the statement being challenged form an integral part of a confession, such incriminating remarks are not rendered inadmissible because a defendant admitted to the commission of another or separate offense. *Walker v. State*, 264 Ga. 79, 80 (3) (440 SE2d 637) (1994). Nor does material evidence become inadmissible simply because it incidentally places a defendant's character in issue. *Greer v. State*, 199 Ga. App. 106, 107 (1) (403 SE2d 825) (1991).

The heavily edited videotape documented a custodial interview conducted after Griffin was arrested on an unrelated battery charge.[1] After being fully apprised of his right against self-incrimination, Griffin uttered several incriminating remarks. When an interviewer suggested that physical evidence might tie Griffin to the rape of T. S., Griffin admitted having had sex with her but claimed that T. S. gave him the truck in exchange for sex. Griffin also disclosed that he had been embroiled in a violent argument with his girlfriend. Then, when explaining why he fled from police during the high speed chase, Griffin attempted to justify his flight by claiming that his girlfriend had taken out a warrant for his arrest. We find no error in the admission of this statement even though it implicated Griffin in the commission of other crimes. *Walker*, supra.

5. Griffin asserts the court erred in qualifying a nurse as an

---

[1] Although a copy of this videotape was not included in the appellate record, the State does not dispute the accuracy of the offending excerpts cited by Griffin.

expert witness because she was not qualified to make medical diagnoses or to interpret the causes of the symptoms.

A decision as to whether a witness possesses such learning or experience to qualify as an expert witness lies within the sound discretion of the trial court and will not be disturbed unless manifestly abused. *Smith v. State*, 210 Ga. App. 451, 452 (3) (436 SE2d 562) (1993). An expert is one whose habits and profession endow that person with the particular skill needed in forming an opinion on the subject matter at inquiry. *Sales v. State*, 199 Ga. App. 791 (1) (406 SE2d 131) (1991). Formal education in a particular subject is not always a prerequisite for expert status, since special knowledge may be derived from experience as well as from study. *Taylor v. State*, 261 Ga. 287, 290 (404 SE2d 255) (1991).

Despite Griffin's claim to the contrary, the trial court admitted this witness only as an expert in "the field of examination of sexual assault victims." The witness, Kabee Johnston, a registered nurse working in women's health since 1971, worked as a "sexual assault nurse examiner" at the Gwinnett Rape Crisis Center. Johnston conducted the physical examinations of both victims and prepared the rape kits that were forwarded to the state crime laboratory. Johnston testified that she had worked as an obstetrical nurse with gynecological experience for 23 years. Johnston explained that she had received specialized professional training in the examination of victims of sexual assaults and in the collection of evidence from such crimes. Johnston testified that she had performed examinations of about 100 women at the rape crisis center. The trial court properly admitted this witness as an expert. *Smith*, supra.

6. Griffin claims the trial court erred in admitting the State's medical diagrams as evidence and allowing them to go out with the jury. He contends these exhibits constituted continuing witness testimony which was inherently prejudicial.

During the testimony of Johnston, the registered nurse who examined both victims, the State utilized two anatomical diagrams depicting female genitalia. The witness indicated on the diagram where injuries to the first victim appeared. The State then presented a second identical anatomical diagram to the same witness so that she could identify the location of the second victim's injuries. Both diagrams were admitted into evidence over objection. The transcript reveals that Griffin posed no objection to the diagrams themselves but rather to the nurse's qualifications to respond to questions as to whether the victims' injuries were consistent with nonconsensual intercourse. An objection not raised at trial cannot be asserted for the first time on appeal because it is deemed waived. *Ingram v. State*, 224 Ga. App. 271 (1) (480 SE2d 302) (1997). Moreover, items of demonstrative evidence, like these, are tools to explain testimony,

and are not subject to a continuing witness objection. *Gabbard v. State*, 233 Ga. App. 122, 124 (3) (503 SE2d 347) (1998); see *Parks v. State*, 199 Ga. App. 736, 738-739 (2) (406 SE2d 229) (1991).

7. Griffin contends the trial court erred in admitting the photo lineup viewed by the first victim, T. S., on the ground that it was impermissibly suggestive because one photograph was used twice.

When T. S. initially viewed a photographic array which included Griffin's photograph, she was unable to select anyone and requested more recent pictures. Five days later, from a different array, T. S. selected Griffin's photograph. But an array is not necessarily defective because the same person's photograph had already appeared in a prior array. See *Rivers v. State*, 225 Ga. App. 558, 562 (3) (484 SE2d 519) (1997). In any event, Griffin's claim that he traded sex with T. S. for her vehicle would seem to negate any issue as to T. S.'s identification of him.

8. Griffin contends the trial court erred by allowing two officers to testify about hearsay statements.

(a) Griffin claims that Detective Jackson was improperly permitted to testify as to what T. S. told him during an interview on the night of the rape.

During cross-examination, Jackson was asked several questions about T. S.'s statement to police. On redirect, Jackson was asked to relate T. S.'s entire statement to enable the jury to have a complete concept of what was said. After Griffin's cross-examination elicited portions of her statement on a piecemeal basis, the State was entitled to bring out as much of the whole conversation as was needed to enable the jury "to arrive at the true drift, intent and meaning" of what T. S. had earlier told police. (Punctuation omitted.) *Thomas v. State*, 196 Ga. App. 88, 90 (2) (395 SE2d 615) (1990). Even had Griffin not opened the door to such testimony, no error occurred because T. S. testified under oath and was subject to cross-examination. *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985).

(b) Griffin claims that the trial court improperly permitted hearsay evidence as to his identity.

After Vickers identified Griffin as the kidnapper and after a high speed chase involving the victim's car, a patrol officer intercepted a pickup truck that approached the area of the search. Satisfied that Griffin was not inside the vehicle, the investigator then showed a photograph to the occupants and inquired whether anyone recognized the person depicted. The investigator testified that several men recognized that person as Griffin. Even assuming arguendo that the identification of Griffin in the photograph by several unnamed citizens was, in fact, inadmissible hearsay, Griffin failed even to suggest how he might have been harmed by this testimony. *Copeland v. State*, 235 Ga. App. 682, 685 (2) (b) (510 SE2d 124) (1998) (harm and error

must be shown for reversal). This evidence was merely cumulative since both victims identified Griffin as their attacker and other evidence linked him to the crimes.

9. Griffin asserts that the trial court erred in admitting the photo lineup viewed by Vickers. Griffin claims the identification process was defective because the photograph selected by Vickers was the only one that depicted only one person.

This argument overlooks the fact that Vickers was acquainted with Griffin and had previously purchased drugs from him. See *Jones v. State*, 258 Ga. 25, 27 (3) (365 SE2d 263) (1988). Since Vickers' identification of Griffin had an independent origin, this evidence was not erroneously admitted. *Arnold v. State*, 198 Ga. App. 449, 450 (1) (402 SE2d 69) (1991).

10. Griffin claims the trial court erred in admitting State's Exhibit 67, which consisted of fingerprint cards, and then allowing these cards to go out with the jury.

During the trial, the State tendered four fingerprints lifted from the second victim's car. Evidence matching Griffin's fingerprints to those found on the hood of the car was relevant to a material issue in the case and therefore admissible. OCGA § 24-2-1. On the back of one of the fingerprint cards appeared a circle with a slash, the number six, the identifying name of Griffin, and the date and time the laboratory technician signed the card. Griffin objected to the comparison results appearing on the back of the cards being sent out with the jury. Over Griffin's objection that the cards would constitute continuing testimony, the court admitted the fingerprint cards including the comparison results on the back of the cards.

Griffin's continuing witness objection was inappropriate. *Gabbard*, supra; *Ingram*, supra. His failure to seek redaction of the challenged portion waived that objection. See *Keller v. State*, 231 Ga. App. 546, 548 (499 SE2d 713) (1998) (information on fingerprint cards indicating the possible commission of other offenses can be redacted).

11. Griffin contends the trial court erred in admitting an enlarged photograph of his fingerprints used by an officer for comparison purposes. He claims that the exhibit should not have been permitted to go out with the jury. This exhibit, however, was admitted into evidence without objection. Griffin cannot assert for the first time any objection to the admissibility of this exhibit, including a continuing witness objection. *Jacobson v. State*, 201 Ga. App. 749, 751 (2) (b) (412 SE2d 859) (1991) (objections not made at trial cannot be asserted on appeal for the first time).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MARCH 14, 2000 —
RECONSIDERATION DENIED MARCH 30, 2000 —

*Robert L. Waller III*, for appellant.
*Daniel J. Porter, District Attorney, John S. Melvin, Assistant District Attorney*, for appellee.