**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 7, 2013**

# In the Court of Appeals of Georgia

A13A1558. MCBURROWS v. THE STATE.

MILLER, Judge.

Following a jury trial, Keith McBurrows was convicted of two counts of armed robbery (OCGA § 16-8-41 (a)) and two counts of possession of a firearm during the commission of a felony (OCGA § 16-11-106 (b) (1)).[1] McBurrows appeals from the denial of his motion for new trial, contending that the trial court erred in: (1) denying his motion to suppress; (2) admitting bad character evidence; (3) allowing hearsay testimony; (4) allowing certain exhibits to go out with the jury in violation of the

---

[1] McBurrows was charged in two separate indictments with offenses against two separate victims, and the indictments were consolidated for trial. McBurrows was also charged with and found guilty of two counts of aggravated assault with intent to rob (OCGA § 16-5-21 (a) (1)), but the trial court merged these counts into his convictions for armed robbery. The State dead docketed the additional charges of possession of a firearm by a convicted felon (OCGA § 16-11-131 (b)).

continuing witness rule; and (5) failing to conduct an in camera inspection of the State's file and denying his request to copy and seal the file. McBurrows also contends that the trial court erred in charging the jury, and the State improperly referred to evidence in violation of the trial court's ruling on a motion in limine. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that on the night of March 21, 2003, the first victim went to a check-cashing store located on the corner of Campbellton Road and Delowe Drive in Atlanta. After she cashed her check, the first victim caught a bus to return to her apartment, which was located about five blocks away from the check-cashing store. Upon exiting the bus, the first victim walked across the street and onto the driveway that lead into her apartment complex. The first victim heard a car and then someone running up from behind her. When the first victim turned around, McBurrows was standing about five feet away and pointing a silver gun at her. McBurrows demanded the victim's purse, which contained approximately $193 in cash. After the first victim gave her purse to McBurrows, he returned to the car and left the apartment complex and headed in the

---

[2] *Randolph v. State*, 246 Ga. App. 141, 142 (538 SE2d 139) (2000).

direction of the check-cashing store. The first victim then ran into her apartment and called the police. The first victim described the vehicle as 1994 two-door, dark-blue Ford Thunderbird that had a drive-out tag.

A few days later, on March 25, 2003, the second victim left work at 11:00 p.m. and drove to the same check-cashing store located on Campbellton Road. After the second victim received some money orders and cash, she exited the store and returned to her car. She got into her car and put her purse, money orders, and some envelopes on the seat and began to close the car door. McBurrows then snatched open the door, pointed a silver gun at the second victim's head, and reached over the victim to turn off the car's interior light. The second victim testified that at one point, she was almost face-to-face with McBurrows and saw his face completely. McBurrows warned the second victim to keep quiet, grabbed her purse and money orders, and took off running. The victim got out of her car and started yelling for help. The victim learned that her assailant left in a dark Ford Thunderbird and headed towards an apartment complex. The second victim subsequently called the police.

A responding officer met the second victim at the apartment complex. The officer spoke to the owner of the Ford Thunderbird. The owner, who had lent his vehicle to McBurrows and his brother, had just seen McBurrows return to the

apartment complex with a woman's purse that contained money orders. When questioned by the police, however, the owner lied to police and said that nobody had recently been driving his vehicle. Since the second victim did not identify the owner of the vehicle as being involved in the robbery, the officer did not believe that the vehicle was involved in the robbery.

About a week later, on April 2, 2003, officers received information that two men were sitting in a parked car across the street from the check-cashing store on Campbellton Road, and the description of the vehicle matched the description of the car given by the victims. Officers responded to the scene and subsequently arrested McBurrows. A search of the vehicle revealed a drive-out tag and a black and silver gun. A photo lineup was subsequently shown to both victims, who both positively identified McBurrows as their assailant.

1. McBurrows challenges the denial of his motion to suppress in several respects. In reviewing a trial court's ruling on a motion to suppress, we may consider all relevant and admissible evidence of record introduced at the motion hearing or during trial. See *Walker v. State*, 314 Ga. App. 67 (1) (722 SE2d 887) (2012). Additionally,

[w]hile a trial court's findings as to disputed facts will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citation and punctuation omitted.) Id.

(a) McBurrows first contends that the officers lacked a reasonable suspicion to conduct the stop. We disagree.

A law enforcement officer may make a brief, investigatory stop of a vehicle when he has a reasonable, articulable suspicion that the person stopped has been, or is about to be, engaged in criminal activity. This specific, articulable suspicion must be based on the totality of the circumstances–e.g., objective observations, information from police reports, the modes or patterns of certain kinds of lawbreakers, and the inferences drawn and deductions made by a trained law enforcement officer; inferences and deductions that might well elude an untrained person. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. The existence of an articulable suspicion can be based on the collective knowledge of law enforcement officials.

(Punctuation and footnotes omitted.) *Prado v. State*, 306 Ga. App. 240, 245 (1) (701 SE2d 871) (2010).

As to the initial stop, the detective investigating the armed robberies testified at the motion to suppress hearing that he compared the similarities between the two armed robberies. The detective went to the check-cashing store on Campbellton Road

5

and DeLowe Drive and to other nearby businesses to ask for their help in apprehending the individual involved in the rash of robberies in the area. The detective informed local business that he was looking for a black male between 5"8" and 6'1" and between 210 and 250 pounds, and he was also looking for a dark blue or black two-door Ford Thunderbird. The detective asked business owners to call him or 911 if they saw a vehicle matching that description in the area between the hours of 10:30 p.m. and 2:00 a.m. At about 10:30 p.m. one night, the detective received a call from a local security guard that the guard saw a dark colored Ford Thunderbird parked across the street from the check-cashing store and that two people were sitting inside the vehicle. The detective broadcast a be-on-the-lookout ("BOLO"), and dispatch then sent some units to Campbellton Road and DeLowe Drive. Police officers subsequently stopped the two-door black Thunderbird across the street from the check cashing store, and McBurrows was detained.

The BOLO broadcast by the detective provided a reasonable basis to stop the vehicle in which McBurrows was a passenger. The BOLO provided particularized information describing the color, manufacturer and model of the vehicle, the number of occupants, and the location of the vehicle. "Particularized alerts issued by police officers for specifically described vehicles possibly involved in criminal activity have

6

long served as a legitimate basis for investigatory stops." (Citations omitted.) *Faulkner v. State*, 277 Ga. App 702, 704 (1) (627 SE2d 423) (2006). Additionally, the identified vehicle was practically identical to the one involved in the armed robberies, the vehicle was in the area where the armed robberies had occurred, and the hour the vehicle was spotted was at about the same time that the other robberies had occurred.

To the extent McBurrows contends that reasonable suspicion could not be based solely on the detective's testimony, and that the officers who conducted the stop were required to testify, his argument is without merit.

> Reasonable suspicion need not be based on [a responding] officer's knowledge alone, but may exist based on the "collective knowledge" of the police when there is reliable communication between an officer supplying the information and an officer acting on that information. In this regard, police are authorized to stop an individual based on a "be on the look out" dispatch or even a radio transmission from another officer who observed facts raising a reasonable suspicion of criminal activity or a traffic violation.

(Citations omitted.) *Camp v. State*, 259 Ga. App. 228, 229 (1) (576 SE2d 610) (2003). Based on the totality of the circumstances, the officers had a reasonable suspicion to believe that the vehicle and its occupants was about to be engaged in criminal activity, and therefore, the stop was valid.

(b) McBurrows also contends that his motion to suppress should have been granted because the stop was unreasonably prolonged. We do not agree.

> The United States Supreme Court has adopted a dual inquiry for evaluating the reasonableness of a lengthy investigative stop. First, we consider whether the officer's action was justified at its inception, and second, whether it was reasonably related in scope to the circumstances which justified the interference in the first place. In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

(Citations and punctuation omitted.) *Randolph*, supra, 246 Ga. App. at 146 (3) (b).

Here, upon arriving at the location of the stop, the detective observed that McBurrows matched the description of the armed robber at the center of his investigation. The detective informed McBurrows that he was investigating the robberies and he asked McBurrows for his name and identification. McBurrows stated that he did not have any identification and provided the name of "Keith Smith." The detective was unable to verify McBurrows's identity with the name and date of birth provided. McBurrows also provided a residential address. Officers and the detective went to that location, and people there said that no one by the name of Keith

8

Smith lived at the residence. When the detective returned, he placed McBurrows under arrest for providing a false name and false address.

The detective testified that he spent about 15 to 20 minutes attempting to verify McBurrows's name and address, and that a total of about 30 minutes had elapsed from the time he gave the BOLO report until the time he placed McBurrows under arrest. There is no evidence that the officers were failing to diligently pursue the investigation to confirm or dispel their suspicions quickly. Moreover, given that McBurrows matched the physical description of the suspect involved in the armed robberies, and the officers spent at least 15 minutes attempting to verify the information given by McBurrows, we cannot say that the stop was unreasonably prolonged. See *King v. State*, 258 Ga. App. 872, 875 (1) (575 SE2d 679) (2002) (detaining and questioning of defendant for approximately 30 minutes was not unreasonable given that officers were investigating a robbery).

(c) McBurrows also argues that the trial court should have suppressed the evidence found during an inventory search of the Ford Thunderbird because the impoundment and subsequent search of the vehicle were not reasonably necessary. Specifically, he asserts that since the owner of the vehicle was present when the stop occurred, the owner could have removed the vehicle. McBurrows did not, however,

raise this contention in the proceedings below. In his motions to suppress, McBurrows challenged only the photo lineups and the basis for the stop and arrest. Additionally, McBurrows did not specifically argue in the trial court that the search of the vehicle pursuant to an impoundment was unlawful.

> [E]vidence exclusion is an extreme sanction and one not favored in the law. For this reason, OCGA § 17-5-30 (b) requires a motion to suppress to be in writing and to state facts showing that the search and seizure were unlawful. On a motion to suppress, the State is entitled to proper notice of the issue raised or it will be deemed waived. In other words, the suppression motion must be sufficient to put the State on notice as to the type of search or seizure involved, which witness[es] to bring to the hearing on the motion, and *the legal issues to be resolved at that hearing.*

(Punctuation and citations omitted; emphasis in original.) *State v. Gomez*, 266 Ga. App. 423, 425 (2) (597 SE2d 509) (2004); see also *Young v. State*, 282 Ga. 735, 736-738 (653 SE2d 725) (2007). The State was plainly not given the requisite notice that one of the issues to be resolved at the suppression hearing was whether the impoundment and subsequent inventory search of the vehicle was necessary. Accordingly, McBurrows's claim is waived.

2. McBurrows contends that the trial court erred in permitting bad character evidence without providing a curative instruction or granting a mistrial. We discern no error.

(a) McBurrows first cites to the detective's testimony about arranging a photo array to show one of the victims. As a preliminary matter, McBurrows did not make a contemporaneous objection to the challenged testimony and has, therefore, waived this argument. See *Allen v. State*, 224 Ga. App. 324, 326 (5) (480 SE2d 328) (1997). Even if not waived, his claim is without merit.

The detective testified that he presented the first victim with two different photo lineups, one that was shown on March 28, 2003 and a second that was shown on April 8, 2003. The detective further testified that

> on the first array of photos that I showed [the first victim] this was a subject that was arrested at the Church's Chicken right next door to the check cashing store. He was arrested for attempting to rob the business. So because of the proximity of the Church's Chicken and the check cashing store I put him in an array of photographs to see if he may have been the person that robbed [the victim].

The detective testified that when he presented the first array of photos to the first victim on March 28, 2003, the first victim did not identify anyone in the array of photographs. The detective subsequently compiled a second photo array for the first victim, and she immediately identified McBurrows from this second lineup. Based on this evidence, it is clear that the detective's testimony about an individual being arrested for robbing the Church's Chicken did not refer to McBurrows.

11

(b) McBurrows next argues that the trial court erred in allowing, over his objection, testimony that he was not working.[3] If a passing reference to a defendant's incarcerated status does not place his character at issue, see, e.g., *Jones v. State*, 270 Ga. App. 368, 370 (2) (b) (606 SE2d 592) (2004), it stands to reason that a passing reference to a defendant's unemployment also does not touch upon his character. Nevertheless, the challenged testimony was relevant to the issue of motive in the case.

> Although motive is not an essential element in proving the crimes charged, the State is entitled to present evidence to establish that there was a motive, and evidence [of McBurrows's unemployment] is relevant to prove that he had a motive for committing the crimes and is not rendered inadmissible by the fact that it [might] incidentally put[] his character in issue.

(Citations omitted.) *Thornton v. State*, 292 Ga. 87, 88-89 (3) (734 SE2d 393) (2012) (concluding that evidence of defendant's drug buy as admissible as to issue of motive for robbery); see also *Stephens v. State*, 214 Ga. App. 183, 186 (5) (447 SE2d 26) (1994) (holding that defendant's statement regarding his dire financial condition was relevant to establish motive for arson).

3. McBurrows contends that the trial court erred in allowing hearsay evidence. We disagree.

---

[3] McBurrows also claims that the witness stated that McBurrows needed money, but the transcript shows that the witness made no such statement.

12

(a) McBurrows argues that the trial court erred in allowing the second victim to testify about the comments of a bystander who observed the assailant leave in a black Thunderbird and offered to take the victim to where the assailants lived. The trial court overruled McBurrows's hearsay objection on the issue, concluding that the bystander's comments were part of the res gestae and explained how the second victim got to the apartment complex on Honeysuckle Lane.

Even if the trial court erred in admitting this evidence, the testimony was cumulative of other admissible evidence; therefore, it did not amount to reversible error. See *Belmar v. State*, 279 Ga. 795, 797 (2) (621 SE2d 441) (2005). In this case, the second victim positively identified McBurrows as the person who robbed her on March 28, 2003. The owner of the Ford Thunderbird testified that McBurrows and another individual had borrowed his Ford Thunderbird on the night of March 28, 2003, and that McBurrows returned to the apartment located on Honeysuckle Lane with a woman's purse and money orders. Since the hearsay testimony was cumulative of other legally admissible evidence of the same fact, that testimony was harmless.

(b) McBurrows also asserts that the photo lineup admonition sheet contained hearsay because it included the signature of an individual who did not testify at his trial. Pretermitting whether the trial court erred, McBurrows has failed to show harm.

13

The admonition sheet in question was the same admonition sheet given to the second victim, and the sheet was given to this other individual on the same date that the second victim positively identified McBurrows from the photo lineup. The admonition sheet does not, however, contain any information showing that this individual positively identified McBurrows as being involved in the armed robbery. Accordingly, McBurrows cannot show harm. See *Watson v. State*, 264 Ga. App. 41, 43 (2) (589 SE2d 867) (2003) ("Harm as well as error must be affirmatively shown by the record to obtain reversal.") (citation omitted).

4. McBurrows also contends that the trial court erred in allowing certain exhibits to go out with the jury during deliberations in violation of the continuing witness rule. We disagree.

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.

(Citation omitted.) *Decapite v. State*, 312 Ga. App. 832, 835 (3) (720 SE2d 297) (2011). The types of documents that have been held subject to the continuing witness rule include affidavits, depositions, written confessions, statements, dying

14

declarations, or other instruments of evidence whose sole value depends upon the credibility of the maker. See *Sherrell v. State*, 317 Ga. App. 571, 576 (2) (731 SE2d 790) (2012); *Brewton v. State*, 174 Ga. App. 109, 110-111 (2) (329 SE2d 270) (1985).

(a) McBurrows asserts that the continuing witness rule was violated when the evidence tag attached to the gun recovered from the Ford Thunderbird was allowed to go out with the jury.

The record reveals that McBurrows made no continuing witness objection either at the time the gun was introduced into evidence or when it was included in the exhibits sent to the jury room. Rather, McBurrows only raised a continuing witness objection to the admonition sheets. Consequently, he has not preserved this issue for appeal. See *Zellars v. State*, 278 Ga. 481, 482-483 (2) (604 SE2d 147) (2004); *Flournoy v. State*, 266 Ga. 618, 618-619 (2) (469 SE2d 195) (1996).

(b) As to McBurrows's complaint regarding the photo lineup admonition sheets, the sheets included the following, limited information: the witness' name and signature, the number of the photograph the witness selected from the lineup, the date of the selection, and the signature of the officer who conducted the lineup. This Court has previously viewed admonition sheets as tools to help explain the photo lineup display shown to a witness, as opposed to a witness's statement. See *Parks v. State*,

199 Ga. App. 736, 738-739 (2) (406 SE2d 229) (1991); *Brewton*, supra, 174 Ga. App. at 111 (2).

We note that the admonition sheet signed by the second victim also contains the additional comment "ID in 5 seconds," and the sheet signed by the first victim contains the statement "Instant ID." Regardless of whether the additional statement constituted "written testimony," however, any error in allowing the exhibits to go out with the jury was harmless. Both victims, who were subject to extensive cross-examination, testified at trial that they positively identified McBurrows as their assailant during the photo lineup,[4] and identified him in court. Additionally, during deliberations, the jury had the photo spreads shown to both victims and, therefore, could compare the fairness of the photo lineups and determine whether the defendant was the individual identified in those lineups. In light of these circumstances, as well as the overwhelming evidence against McBurrows, we conclude that it is highly probable that any error in permitting the admonition sheets to go out with the jury did not contribute to the jury's verdict. See *Parks*, supra, 199 Ga. App. at 738-739 (2) (1991) (holding harmless the submission to the jury of photo identification sheet

---

[4] The first victim also testified that when she was shown the photo lineup, she immediately identified McBurrows as the person who robbed her, which was consistent with the comment on her admonition sheet that it was an "Instant ID."

16

containing comment that "[i]t has to be # 2 because the mustache and lips matched the robber"); cf. *Kent v. State*, 245 Ga. App. 531, 533 (3) (538 SE2d 185) (2000) (allowing victim's statement to go out with jury violated the continuing witness rule, but the error was harmless since the evidence contained therein was brought out during trial and evidence of guilt was overwhelming).

5. McBurrows next contends that the trial court erred in failing to conduct an in camera inspection of the State's file and in denying his request to copy and seal the prosecutor's file for possible appellate review. We do not agree.

Here, during cross-examination of the detective, McBurrows moved for a mistrial on the basis that the State failed to provide him with the detective's notes regarding his March 28, 2003 interview of the first victim. The detective testified that the subject notes contained the first victim's description of her assailant. The detective further testified that he had provided his notes to the prosecutor, who then put them in a trial binder. The State argued that it handed the material in question to former defense counsel, and at the State's suggestion, the trial court stated that it would conduct an in camera inspection of the State's trial binder for the purposes of determining whether it contained any exculpatory evidence. Following the in camera inspection, the trial court stated that it did not find any exculpatory evidence in the

17

State's file, nor did it find the subject notes the detective gave to the prosecutor. McBurrows renewed his motion for a mistrial and further requested that the State's file be copied and filed under seal for purposes of appellate review. The trial court stated that most of the State's file consisted of notes prepared for trial, and it denied McBurrows's motions.

The trial court's denial of McBurrows's motion to copy and seal the prosecutor's file for use by the appellate courts forms the basis of his enumeration of error. McBurrows, however, makes no makes no specific claim that any particular exculpatory evidence was in fact suppressed. Rather, he asks that we remand the case for the trial court to conduct another in camera inspection. Since McBurrows does not claim that exculpatory evidence was withheld, he

> has no grounds to appeal the trial court's review of the prosecutor's file. Any error on the part of the trial court in refusing to make a record of the in camera inspection was harmless.

(Citations and punctuation omitted.) *Jenkins v. State*, 229 Ga. App. 556 (1) (494 SE2d 311) (1997); see also *Dempsey v. State*, 279 Ga. 546, 548 (3) (615 SE2d 522) (2005) (holding that appellate courts will not review a trial court's in camera inspection based on mere speculation that there might be additional material which should have been found and produced for the defense).

18

6. McBurrows next contends that during its opening statement, the State improperly referred to evidence about the non-testifying bystander in violation of the trial court's ruling not to do so. The record shows that prior to trial, McBurrows filed a motion in limine to preclude references to the hearsay testimony regarding the bystander. Contrary to McBurrows's suggestion, however, the trial court denied his motion in limine on the ground that the hearsay testimony was part of the res gestae and helped to explain the second victim's conduct.[5] In light of the trial court's ruling that the challenged testimony was admissible, the prosecutor's opening remarks referring to this testimony did not amount to reversible error. See *Mitchell v. State*, 271 Ga. 242, 243 (2) (516 SE2d 782) (1999); *Waldrip v. State*, 266 Ga. 874, 881 (4) (471 SE2d 857) (1996).

7. McBurrows contends that the trial court made several errors in its charge to the jury. The record shows that after the jury charge was given, the trial court asked the defense if it had any exceptions to the jury charge, and McBurrows responded "[n]ot on that." Since McBurrows failed to object to the jury charge as given, we

---

[5] As indicated in Division 3 (a) above, the trial court also denied McBurrows's objection to the hearsay testimony when it was given.

19

review his claims only for plain error. See OCGA § 17-8-58 (b); *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012). The "plain error" test

> authorizes reversal of a conviction if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

(Citations and punctuation omitted.) *Lake v. State*, 293 Ga. 56, 59 (5) (743 SE2d 414) (2013).

Here, we need not decide whether the challenged charges were erroneous, because even if we assume that the charges given were erroneous and that such errors were obvious, there is no plain error because McBurrows has not shown that the errors affected the outcome of the proceedings. *Lake*, supra, 293 Ga. at 59 (5). Notably, we have reviewed the entirety of the jury instructions as given and conclude that they were not confusing or misleading. "[A]n erroneous charge does not warrant a reversal unless it was harmful and, in determining harm, the entirety of the jury instructions must be considered." *Bulloch v. State*, 293 Ga. 179, 188 (4) (744 SE2d 763) (2013). Moreover, any error in the jury charge was harmless where, as here, there is overwhelming direct evidence of guilt. See *Durham v. State*, 292 Ga. 239, 241 (3) (734 SE2d 377) (2012); *Marshall v. State*, 285 Ga. 351, 354 (5) (676 SE2d

20

201) (2009). Accordingly, we conclude that there is no plain error in the jury charge. See *Durham*, supra, 292 Ga. at 241 (3).

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*