**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 1, 2022**

# In the Court of Appeals of Georgia

A22A0400. IN THE INTEREST OF K. K., a child.

HODGES, Judge.

K. K. was removed from his Mother's care after she left a loaded gun unsecured, and K. K., who was then four years old,[1] witnessed his three-year-old brother,[2] A. K., fatally shoot himself in the head. After the juvenile court found K. K. dependent, the Mother filed the instant appeal. She alleges that the juvenile court erred in denying her motion to dismiss the case, entering a dependency finding despite a lack of evidence, using an incorrect legal standard to find K. K. dependent, and ordering supervised visitation despite a lack of evidence. For the reasons

---

[1] K. K. was born on April 4, 2016.

[2] Although the appellate brief filed on behalf of the Department of Human Services by the State's Office of the Attorney General refers to the children as twins, we found no evidentiary support for this assertion in the record.

explained below, we vacate the juvenile court's dependency determination and disposition order and remand this case with instruction.

In an appeal from a dependency adjudication, this Court reviews the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was dependent. *In the Interest of S. C. S.*, 336 Ga. App. 236, 244 (784 SE2d 83) (2016) (stating standard of review in dependency case). In making such a determination, "we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened." (Citation and punctuation omitted.) Id. at 245.

> Under the most recent version of Georgia's Juvenile Code, the juvenile court may place a minor child in the protective custody of [DFCS] where the State shows, by clear and convincing evidence, that the child is a dependent child . . . . Pursuant to OCGA § 15-11-2 (22), a dependent child is defined as "a child who: (A) Has been abused or neglected and is in need of the protection of the court; (B) Has been placed for care or adoption in violation of law; or (C) Is without his or her parent, guardian, or legal custodian." But even after finding a child to be dependent, a juvenile court can only remove a child from a parent's

2

custody if it finds that the dependency resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. And proof of unfitness must be shown by clear and convincing evidence[.]

(Citations and punctuation omitted.) *In the Interest of T. S.*, 348 Ga. App. 263, 269 (820 SE2d 773) (2018). Additionally,

[a]n order entered following a hearing in a dependency proceeding shall include findings of fact. OCGA § 15-11-111 (b) (2). Such findings of fact should be made in accordance with OCGA § 9-11-52 (a), which provides that a court must find the facts specially and . . . state separately its conclusions of law.

(Citations, punctuation, and emphasis omitted.) *In the Interest of B. G.*, 345 Ga. App. 167, 168 (1) (812 SE2d 552) (2018).

On August 10, 2020, the Department of Family and Children Services ("DFACS") filed a dependency complaint on behalf of K. K. The complaint alleged that K. K. needed foster care placement because of neglect and a lack of adequate supervision, as K. K.'s Mother had been incarcerated on charges of second degree murder and second degree cruelty to children because, while in her presence, her

3

minor son, A. K., had fatally shot himself in the head with a handgun. K. K. had witnessed his brother's shooting and death.

The juvenile court held a dependency hearing, at which the Mother testified and was represented by counsel. The detective who investigated A. K.'s death testified that he received a call on July 28, 2020, about a child's shooting. The Mother's boyfriend had placed his loaded gun on top of an air mattress. The Mother noticed the gun, and placed it on the floor next to the mattress. She then went to sleep on the mattress with both A. K. and K. K. The boyfriend came in later, pushed the gun partially under the mattress, and went to sleep. The next morning, the boyfriend was still asleep and the Mother was "playing with her phone" with the "covers over her head" while K. K. watched television and A. K. ate a Reese's Peanut Butter Cup candy. A. K. apparently began "playing with the handgun . . . [which] went off and shot him in the head."[3] A. K. apparently had been looking down the barrel of the gun. The detective testified, "I know [K. K.] was a witness to it. We interviewed him." The

---

[3] The Mother contends, for the first time on appeal, that the detective's testimony about A. K. shooting himself in the head is double hearsay. The Mother raised no objection to the detective's testimony on this point at the hearing, nor did she object below or on appeal to other record evidence which lists this as the reason for A. K.'s death. See generally *McBurrows v. State*, 325 Ga. App. 303, 310 (3) (a) (750 SE2d 436) (2013) (admission of hearsay is harmless where it is cumulative of other admissible evidence); see also OCGA § 24-8-802.

Mother and her boyfriend reported that they failed to put the gun away because they were tired.

After the shooting, K. K. initially stayed with his maternal grandmother, but DFACS requested foster care placement in part because the grandmother had pending charges of aggravated assault and cruelty to children, as well as other charges, which the caseworker testified meant any placement with her was prevented by DFACS policies and procedures. The Mother was incarcerated and released on bond, and the caseworker testified that K. K.'s placement with the grandmother also was inappropriate because the conditions of the Mother's bond required her to remain at the grandmother's home and prevented her from contact or violent contact with K. K., as he had been identified as a victim in the Mother's criminal case. The Mother testified that A. K.'s death changed how she would parent K. K. because she would "be more protective over him and be there for him more. . . ."

After the hearing, the juvenile court issued an order of adjudication and temporary disposition, finding K. K. dependent by clear and convincing evidence because he had been abused or neglected, and because the Mother had failed to provide proper parental care, control, and adequate supervision. The juvenile court ordered supervised visitation because of the Mother's bond conditions and the

5

charges against her, but "granted [DFACS] to move to unsupervised visitation once it is deemed safe and appropriate" and also granted DFACS "the authority to place the child in the home of the mother when it is deemed safe and appropriate to do so."

The Mother filed the instant appeal, raising the enumerations of error listed above.

In this case, the juvenile court signed a 7-page dependency order, drafted by the State's counsel on behalf of the State's special assistant attorney general. The order does contain, briefly, separate findings of fact and conclusions of law. However, as the Mother points out in her appellate brief, "parental unfitness is essential to support an adjudication of dependency[.]" (Citation and punctuation omitted.) *In the Interest of V. G.*, 352 Ga. App. 404, 406 (1) (834 SE2d 901) (2019); see generally *In the Interest of H. S.*, 285 Ga. App. 839, 843 (648 SE2d 143) (2007) ("Even where the parent has been convicted and incarcerated for commission of a felony, a finding of parental unfitness must be based on a showing that there is a demonstrable negative effect on the quality of the parent-child relationship.") (citation omitted.).

The juvenile court's order, however, "contains no finding whatsoever with regard to parental unfitness . . . [and this] deficienc[y] prevent[s] us, in this case, from

6

making an intelligent review of the mother's . . . challenges to the sufficiency of the hearing evidence." (Citation and punctuation omitted.) *Interest of A. B.*, 350 Ga. App. 158, 159 (1) (828 SE2d 394) (2019). Accordingly, we vacate the juvenile court's order of adjudication and temporary disposition containing its dependency finding, and remand the case with direction that the juvenile court prepare appropriate findings of fact and conclusions of law and enter a new judgment, after which, the Mother may file another appeal if necessary. See id.

*Judgment vacated and case remanded with direction. Barnes, P. J., and Brown, J., concur.*